## RAMON H. MAKEKAU *v.* S. KANE, TAKACHITA, H. KOBAYASHI, MAN HING CO., ALIAS AHANA, IOSHIDA, M. HINO, TOM SANG CHUNG, KELIIKAPU, BEN KAWAI, MIZUNO, IBAORA AND LAM CHAN.

EXCEPTIONS FROM CIRCUIT COURT, FOURTH CIRCUIT.

ARGUED JULY 14, 1910.                              DECIDED AUGUST 1, 1910.

PERRY AND DE BOLT, JJ., AND CIRCUIT JUDGE ROBINSON IN PLACE OF HARTWELL, C.J.

EVIDENCE—*declarations concerning pedigree.*

Declarations of deceased persons who were de jure related by blood or marriage to the family in question may be given in evidence in matters of pedigree.

ID.—*relationship of declarant.*

A qualification of the rule is that before a declaration can be admitted in evidence the relationship of the declarant with the family must be established by some proof independent of the declaration itself, but such proof may be slight.

ID.—*order of proof.*

The mere order of proof is immaterial. That is a matter resting largely in the discretion of the trial court.

ID.—*declarations not secondary evidence.*

If the declarant is dead, the declarations are not to be excluded merely by reason of the fact that living members of the same family can be examined on the same point.

ID.—*narration of past events, inadmissible.*

A mere narration of past events, not against interest, though made by a claimant while in possession of the land in controversy, is but hearsay and not competent to be proven.

ID.—*receivable only to give character to possession.*

The doctrine that self-serving declarations of a claimant to land are admissible assumes that the declarations were made while the declarant was in possession of the land and that they are not offered except as coloring the occupation and showing that it was hostile.

APPEAL AND ERROR—*instructions—necessity of exceptions.*

A party who fails to object and except to an assumption or omission of certain facts by a trial judge in his instructions to the jury, and who fails to request other instructions on the point, cannot,

the verdict having been rendered in conformity with the instructions, upon an exception to the verdict on the ground that it is contrary to the law and the evidence, obtain a review of the alleged error in the assumption or omission.

EVIDENCE—*sufficient to support verdict.*

Upon the evidence in this case a motion for a directed verdict held to have been correctly denied.

COSTS—*witness fees—defective service of subpoena.*

Mileage and witness fees are taxable as costs even though the subpoena is served by an officer not authorized by law to serve it, provided the witness waived the defect, attended and testified.

OPINION OF THE COURT BY PERRY, J.

This was an action of ejectment in which the jury returned a verdict for the plaintiff. The defendants bring the case to this court upon twenty-two exceptions.

Exceptions 1 to 6 inclusive and 14. S. P. Kamakea, the first witness for the plaintiff, gave testimony concerning the relationship of the plaintiff's grantors to Lono, the patentee. He testified in opening that Kamakea was his father and Hulihewa his mother and that his knowledge of the family tree came through his grandfather Kekuuwelu and his grandmother Kamaka, the parents of his father. His testimony was objected to on the ground that there was no evidence tending to show that one of the declarants, Kekuuwelu, was dead or otherwise unable to appear at the trial, and upon the further ground that the relationship of the two declarants Kamaka and Kekuuwelu with the family had not been shown by proof independent of the declaration itself. As to the second ground it is sufficient to say that the plaintiff testified (tr. p. 59) that the defendant Kane told him that he, Kane, was "the son of Kamaka" (the witness probably said "grandson") "and bought Kimo's interest." Meleana Kalili testified (tr. p. 33) that Papala was her mother and that Papala's parents were Kekapa and Kalimaeka, and that Kane was a son of Kekapa. Kane testified (p. 43) that his parents were Kekapa and Kali-

maeka, and there was other testimony (for example, pp. 36, 37), though slight, tending to show that Kekapa, Kimo, Papala and Kamakea, the father of S. P. Kamakea, were all members of the same family. All of this evidence was admitted, it is true, after the witness S. P. Kamakea had given his testimony, although before the defendants' motion to strike made at the close of the plaintiff's case, but the mere order of proof is immaterial. That is a matter largely in the discretion of the trial court, and upon this point it cannot be said that there was any abuse of discretion in admitting the evidence of the declarations.

The law on the subject of evidence of pedigree is stated in *Fulkerson* v. *Holmes,* 117 U. S. 389, 397, as follows: "The proof to show pedigree forms a well settled exception to the rule which excludes hearsay evidence. This exception has been recognized on the ground of necessity; for as in inquiries respecting relationship or descent facts must often be proved which occurred many years before the trial and were known to a few persons, it is obvious that strict enforcement in such cases of the rules against hearsay evidence will frequently occasion a failure of justice  *  *  *  Traditional evidence is therefore admissible  *  *  *  The rule is that declarations of deceased persons who were de jure related by blood or marriage to the family in question may be given in evidence in matters of pedigree  *  *  *  A qualification of the rule is that before a declaration can be admitted in evidence the relationship of the declarant with the family must be established by some proof independent of the declaration itself but it is evident that but slight proof of the relationship will be required since the relationship of the declarant with the family might be as difficult to prove as the very fact in controversy." As to the death of Kekuuwelu, evidence of that fact was not a condition precedent to the admission of S. P. Kamakea's testimony. That witness' statement was that the declarations

came not only from Kekuuwelu but also from Kamaka. There was other evidence, though introduced subsequently, tending to show that Kamaka had died many years ago. Evidence of the declaration was therefore admissible even though Kekuuwelu or other witnesses were living and available who could testify to the same relationship. "The rule had its origin in necessity but now is well established and universal in its application." *Craufurd* v. *Blackburn,* 17 Md. 49, 54. "Nor do such declarations stand upon the footing of secondary evidence to be excluded where a witness can be had who speaks upon his subject from his own knowledge."—Ib. 54. "If the declarant is dead his declarations are not excluded by the fact that living members of the same family could be examined on the same point."—1 Elliott Ev. Sec. 365. See, also, on this subject generally, 2 Wigmore Ev. Sec. 1481, pp. 1841, 1842, 1843; 1 Greenleaf Ev. (16 ed.) Sec. 114 b and c, and 1 Elliot Ev. Sec. 380.

Exceptions 7 and 15. These relate to the admission in evidence of the deed from Kimo to Kane which was offered for the purpose of showing that the defendant Kane and the plaintiff claimed title from a common source, to-wit: from Kamaka. The deed is merely a conveyance of all of the grantor's interest in Lono's kuleana, and the objection advanced is that it is not evidence tending to show that Kane claims under Kamaka and was therefore inadmissible for the purpose for which it was offered. Assuming the objection to be good, the error was not prejudical or reversible. The admission of the deed must be regarded as having been harmless in view of the fact that the testimony that Kamaka was a sister and one of the heirs of Lono was undisputed.

Exceptions 8 to 13 inclusive and 15. These were noted to the admission in evidence of the following deeds: S. P. Kamakea to plaintiff; Meleana Kalili to plaintiff; Halawale to Kauwahipu; Kauwahipu to Maria P. Kaunamano; Maria P.

Kaunamano to W. C. Achi, Trustee; and W. C. Achi, Trustee, to the plaintiff. These were offered to prove the acquisition of title by plaintiff of the interests claimed by him in the action. The argument in support of the exceptions is that the deeds, or some of them, contained recitals of pedigree, that no other competent evidence had been introduced tending to show that Kamaka was an heir of Lono and that therefore the deeds were inadmissible. Having already held that the evidence of S. P. Kamakea concerning the relationship of Kamaka to Lono was admissible, these exceptions must be overruled.

Exception 16. At the close of the plaintiff's case defendants moved for a directed verdict on the ground that sufficient title had not been proven on behalf of the plaintiff. The exception was to the denial of that motion. The ruling excepted to was correct for there was clearly evidence justifying a verdict for the plaintiff even though for a smaller fractional interest in the land than was claimed in the declaration.

Exceptions 17 and 18. Kanamu, a witness called for the defendants, having testified that at one time he was in the employ of Kimo, Kane's grantor, planting cane on certain land, presumably the land in question, the following proceedings took place: "Q. Who paid the taxes on the land, if you know? A. Kimo during his lifetime paid the taxes but now Kane pays the taxes. Q. Who collected the rents and profits during the time Kimo was living? A. Kimo. Q. Hear any statements ever made by Kimo as to who owned the land?" This question was objected to and disallowed. On cross-examination the witness testified that Kimo used for his own purposes all of the income which he had collected from the land, and subsequently admitted that Kimo had told him that he had so collected and disposed of the income and that these statements were the witness' sole source of information on the subject. Thereupon a motion by plaintiff to strike out all of the evidence of

the witness concerning Kimo's collection and disposition of the rents and profits was granted. Exception 17 is to the disallowance of the question and exception 18 to the granting of the motion.

Assuming the law to be, as contended by the defendants, that the declarations made by a claimant, not to the true owner but to a stranger, to the effect that he owned or claimed the land in dispute are admissible, not for the purpose of proving the truth of those assertions but for the purpose of giving character to the possession and of showing that it was hostile (see *Carter* v. *Lulia*, 16 Haw. 630), the rule, even in the jurisdictions which adopt it in its broadest form, is subject to certain limitations. One of them is that a mere narration of past events is but hearsay and not competent to be proven. *Knight* v. *Knight*, 178 Ill. 553, 557. Kimo's statement to Kanamu that he, Kimo, had collected all of the rents and profits of the land and had used them all for his own support was a mere narration of past occurrences and inadmissible. Other limitations are that the declarations in order to be admissible must have been made while the declarant was in possession of the premises and that they are not offered except as coloring the occupation, or, in other words, giving character to it and showing that it was hostile. 3 Wigmore Ev. Sec. 1778. The question, "Hear any statements ever made by Kimo as to who owned the land," was therefore correctly disallowed. In the first place it does not appear that it was offered for the sole purpose of giving character to the possession, and in the second place the witness' attention was not called specifically to the time when Kimo was in possession. In answer to the question as stated the witness could well have testified to declarations made when Kimo was out of possession. Nor was any offer made by the defendants to prove by the witness that the declarations were made by Kimo while he was in possession or that they were of a claim of ownership in himself or such as

to show that his possession was hostile to the title of the true owner.

Exception 19.    Evidence was introduced by the plaintiff from which the jury could have found the following facts: that Lono, the patentee, died leaving as his sole heirs his widow Kaiahaehae and his sister Kamaka; that Kamaka had a husband, Kekuuwelu, and left surviving her seven children: Kekapa (w), Lunu (k), Kamakea (k), Kimo (k), Halawale (k), Elia (k) and Kihei (k); that of these Lunu, Elia and Kihei died unmarried and without issue; that Kekapa (w) married Kalimacka and had two children, Kane, one of the present defendants, and Papala (w); that Papala married Punohu and had four children: Meleana Kalili (w); Keakilani (w); Wailua (w) and Helena (w); that Keakilani died unmarried and without issue; that Kamakea married Hulihewa (w) and had the following children: Kauwahipu (k); Lunahai (w); Kamakee (k) and S. P. Kamakea (k); that on August 23, 1903, Kimo conveyed to the defendant Kane all his interest in the land in question which is one of the apanas mentioned in the patent to Lono, and that in 1909 Meleana Kalili, S. P. Kamakea and W. C. Achi trustee conveyed to the plaintiff by separate deeds all of their interest in the land, the deed of W. C. Achi, trustee, including the interests of Halawale and Kauwahipu.

Under this exception, that the verdict was contrary to the law and the evidence, the defendants claim that no evidence was adduced tending to show that Kekuuwelu died before Lunu, Elia and Kihei, or any of them, or even that he was dead at the time of the trial or that Keakilani survived her father Punohu or that any of these four children died under age and that under our statute (R. L. Sec. 2510) if these children did not die under age and left surviving them their respective fathers their shares would pass not to their brothers and sisters but to their respective fathers.    We are unable to find reported in

the transcript any evidence tending to show the date or even
the fact of the death of Kekuuwelu, or the date of the death of
Punohu, or whether or not they respectively survived their
children above named, or tending to show that any of the four
children in question died under age and it may be that the law
applicable to the subject is as claimed by the defendants at the
argument of these exceptions. However that may be, the point
is not now open to the defendants. At the trial the presiding
judge gave a statement to the jury of the plaintiff's claim on
the subject of pedigree substantially as above set forth, omit-
ting, however, in that statement all reference to the fact or date
of the deaths of Kekuuwelu and Punohu and of the survivor-
ship of Lunu, Elia, Kihei and Keakilani, adding that the plain-
tiff claimed that Kamaka had by adverse possession acquired
title to the one-half interest of Kaiahaehae, referring to the
further claim of plaintiff that the deed of Meleana conveyed
"her one-twenty-fourth interest" in the land, speaking of the
other interests conveyed to plaintiff as being "Halawale's one-
fourth," "S. P. Kamakea's one-sixteenth" and "J. Kauwa-
hipu's one-sixteenth," and concluding by saying: "If you find
these claims to be substantiated by a preponderance of the evi-
dence you must then find for the plaintiff unless you find" that
title by adverse possession was acquired by the defendants. No
exception was noted by the defendants to this charge. No ob-
jection was made thereto nor was any request presented for
any further or different instructions on the subject. The only
other issue left to the jury was whether or not the defendants
and their predecessor had acquired title to the land by adverse
possession. It is clearly apparent from the verdict rendered,
from the charge and from the remainder of the record that the
jury found that the defendants had not acquired title by ad-
verse possession; that Kamaka inherited a one-half interest and
acquired title by adverse possession to the other one-half, and
that it accepted as true the plaintiff's evidence, which was un-

disputed, concerning the pedigree. Under these circumstances the jury had no alternative in view of the instructions given but to render the verdict which it did render. It was under obligation to accept the law as stated by the court. In the absence of an exception the correctness of the instructions will not now be considered for the first time. A party cannot sit by and acquiesce in the law stated by the presiding judge, making no objection to an erroneous assumption of fact, or to an omission to refer to certain facts, and speculate on the chance of a favorable verdict on another issue and then successfully move for a new trial founded upon the alleged errors in the charge or upon the assumption or omission just referred to. Such objections should be made while there is still time to correct the error either by a modification of the charge or by the allowance of further evidence. Assuming that the court erred in its instructions it does not necessarily follow that the jury has failed to accomplish justice by its verdict for it may well be that the fact was that Kekuuwelu and Punohu died before their children, that this fact was known to defendants and that the omission to object to the charge was due to such knowledge. However that may be, the rule must be the same whether the failure to object and except was due to that knowledge or to a lack of vigilance at the trial.

The law here laid down has been well established in this jurisdiction. In *Kanaloa* v. *Union Mill Co.,* 7 Haw. 547, 548, (1889), the jury was instructed directly to find for the defendants and thereupon without retiring returned an oral verdict in conformity with the direction. Upon the exception to the verdict the court said: "We cannot find either by the bill of exceptions or the record that any exception was taken to the instructions given to the jury by the court, which must be done before the case is left to the jury. Consequently there is no exception taken to the law as charged by the court (and the law must stand as given) and the verdict that was given accord-

ingly." Referring to the language just quoted the court, in *Gillespie* v. *McBryde*, 13 Haw. 432, 433 (1901), said: "We understand that this rule has never been modified or overruled and is still in full force and vigor in this jurisdiction." "A verdict is contrary to law, within the meaning of an exception of this nature, when it is contrary to law as claimed and ruled upon at the trial."—*Territory* v. *Nobriga*, 16 Haw. 29, 32, "It may be that this instruction was erroneous but the error, if any, cannot now be taken advantage of because no request was presented by the defendants for further instructions on the subject and no exception was noted to the judge's failure to instruct or to the instructions as given." *Brown* v. *Bannister*, 14 Haw, 34, 37. See also *Lihue Plantation* v. *Kepalai*, 13 Haw. 515, 516; *Case* v. *Dodge*, 18 R. I. 661, 665; *State* v. *Rye*, 35 N. H. 368, 381; *Texas & P. Ry. Co.* v. *Ludlam*, 52 Fed. 94, 96; *Downing* v. *Glenn*, 26 Neb. 323, 325; *Mayor and Aldermen of Knoxville* v. *Bell*, 80 Tenn. 157, 161; *R. R.* v. *Ryan*, 17 Colo. 98, 104, 105; *Murray* v. *Heinze*, 17 Mont. 353, 361, and *Valerius* v. *Richard*, 57 Minn, 443, 447.

There was evidence, it will be recalled, tending to show that Kamaka inherited an undivided one-half of the land from Lono, and Kaiahaehae, the widow, the other half. There was also evidence which, while brief and perhaps not of the most satisfactory character, was nevertheless sufficient to support a finding of the following facts: that Lono died in 1858; that not long after Lono's death Kaiahaehae left the land, took up her residence at Waipio and never again lived on the land in question, and that she died not long after Lono's death; that Kamaka died in 1883 or 1884; that Kamaka and after her her seven children lived upon the land and occupied it to the exclusion of all others; that from the time of Lono's death neither Kaiahaehae nor any other person under her occupied or in any manner made use of the land or made any claim to it; perhaps also that the period of occupation of Kamaka herself in her

lifetime was more than twenty years, but however that may be, that the period of occupation by Kamaka and after her by her children was more than twenty years; that at least three of Kamaka's children built on the land, according to one witness three dwelling-houses and according to another witness five dwelling-houses, and that Kamaka and all of her seven children occupied these houses as well as the whole land as one family having equal interests and without any special title or rights in the builders of the houses. In other words, upon the evidence a finding that Kamaka and her seven children acquired by adverse possession title to Kaiahaehae's undivided one-half interest in the land in question cannot be disturbed.

Exception 21 is to the entry of the judgment. The contention is that the verdict, "We the jury in the above entitled cause find for the plaintiff," is to be interpreted as meaning that the jury found that the plaintiff is entitled to the whole land and not merely to a fractional interest therein and that therefore the judgment for an undivided five-twelfths interest is void. While it is true that in the declaration the prayer is for the restitution of "said piece of land" it is clear from the allegations of the declaration that all the plaintiff claims is an undivided five-twelfths interest. Paragraph 2 reads, "That the plaintiff claims the right of immediate possession of and title in fee simple to five undivided twelfths (5-12) of the piece or parcel of land above described," and paragraph 3, "That by reason of the unlawful detention by the defendants of the said five undivided twelfths (5-12) of the said piece of land, the plaintiff has been damaged in the sum of $1000." The court in its instructions to the jury stated, without objection or exception by the defendants, "The plaintiff in this case, Raymon H. Mákekau, claims title in fee simple to an undivided 5-12 of Apana 2 of Grant No. 929 to Lono." The verdict must be read in the light of the issue as framed by the pleadings and recognized in the instructions and can only be construed to be a find-

ing for the plaintiff for an undivided five-twelfths interest. The judgment was therefore in accordance with the verdict.

Exception 22 is to the denial of a motion for a new trial. The motion presents no questions not already disposed of.

Exception 20. The court allowed as a part of the costs three items of $48.80 each, being mileage and fees for attendance paid to three witnesses summoned from Honolulu. The objection is that the subpoena was served by a police officer who, it is claimed, under R. L. Sec 1571 is not one of the persons authorized by law to serve such process, that the service was void and that therefore the mileage is not taxable as costs, reference being made in this connection to R. L. Sec. 1891 which reads as follows: "Every witness subpoenaed and attending upon the trial of any civil cause, in any court in this Territory, shall be paid the sum of one dollar for each day's attendance in court, and traveling expenses at the rate of ten cents a mile each way. The fees of witnesses shall be taxable items in the bill of costs to be paid by the losing party. Whatever the rule might have been with relation to proceedings for contempt in the event of a refusal by the witnesses to attend in consequence of the alleged invalidity of service, the witnesses saw fit not to raise the point and obeyed the subpoena. The provision for service by designated officers was designed for the benefit and protection of the persons to be served as well as for the due administration of justice by the courts. It was competent for the witnesses to waive the possible invalidity and having waived it the sums paid to them for mileage and fees are, in our opinion, taxable as costs. *Mattock* v. *Wheaton,* 10 Vt. 493; *Alexander* v. *Harrison,* 28 N. E. (Ind.) 119, 120. The object of the provision for payment is to secure, with fairness, the attendance of the witnesses. That object was accomplished and the parties had the benefit of their evidence.

The exceptions are overruled.

*W. C. Achi* (*Harry Irwin* with him on the brief) for plaintiff.

*W. T. Rawlins* (*LeBlond & Smith* with him on the brief) for defendants.