# R. A. DRUMMOND AND CASIMIRA A. DRUMMOND, HIS WIFE, *v.* WILLIAM MAKAENA, ET AL.

## No. 1756.

SUBMITTED SEPTEMBER 6, 1927.  DECIDED OCTOBER 12, 1927.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY PERRY, C. J.

This is a suit in equity for the partition of two pieces of land of an aggregate area of 3.56 acres, described in L. C. A. 4665, R. P. 3274, to Naeole. The plaintiff claimed in the bill to be the owner of an undivided four-sixths interest. Certain of the respondents defaulted and as to them a decree *pro confêsso* was entered. The remaining respondents answered, claiming to be the owners of all of the land. The trial of the issue of title thus raised was had before a jury. At the close of the trial the presiding judge instructed the jury to render a verdict for the defendants and a verdict was rendered in accordance with the instruction. The respondents not desiring partition, a decree was entered denying the prayer of the petition. The case comes to this court by writ of error.

In order to prove the devolution of the title from Naeole, the patentee, to himself it became necessary for the petitioner to show that the sole heirs of Naeole were Paele and Kapulehu, his brothers, and Maliekapu, his sister. This he sought to do by introducing in evidence a so-called decree of Circuit Judge Hutchinson, sitting at chambers, in probate, at Lahaina on June 2 and 3, 1862. This decree was at first admitted in evidence, but later in the trial respondents' motion to strike the same from the files was granted. In the record in question entitled "Estate of Naeole of Keanae, E. Maui," there are only three papers, one containing a statement of the proceedings had in court and of the testimony of the witnesses and concluding with the words, "the court declares the property of deceased to belong to the two brothers and sister of deceased in equal proportions, 1 third to each," the second being a copy of a deed of adoption, in Ha-

waiian, and the third being the petition in the case, also in Hawaiian. The first of these was offered in evidence by the petitioners and the other two by the respondents, the latter in order to aid the court in determining whether or not the so-called decree was admissible in evidence. A translation of the petition in probate No. 190 is as follows: "Estate of Naeole of Keanae E. Maui, Dec'd. In Probate. To the Honorable F. W. Hutchinson, Circuit Judge of Maui: The undersigned prays that he may be appointed administrator of the real property and personal property of Naeole of Keanae Island of Maui East deceased intestate. Therefore notify Makeakea, and decree the real property and the personal property unto Naeole adopted child, which Naeole the elder adopted and absolutely became Naeole the elder's deceased and the same confirm unto Naeole the younger the one surviving now. And the undersigned prays unto his honor that this be heard and that he be granted the authority and right according to civil law section 1057. In testimony of the words above, I hereunto set my name this 10 day of May 1862." (Signed) "By Solomona."

It thus appears that the cause then before the circuit judge sitting in probate was a petition by one Solomona for the appointment of himself as administrator "of the real property and personal property" of Naeole, who died intestate, accompanied by a request in the same petition that one Makeakea be notified of the proceeding and that the court do "decree the real property and the personal property unto Naeole adopted child." It may be assumed that Makeakea was summoned as desired. No attempt was made at the trial to show that the parties in the case at bar are in privity with Makeakea or Solomona or with any other person who was a party to that proceeding, if there were others. No attempt is made in this court to rely upon the decree or order or declaration of

Judge Hutchinson as constituting *res judicata* binding upon the present respondents. It could not operate as *res judicata* unless the parties were the same. The sole justification urged in favor of the admissibility of the decree is the existence of section 2609, R. L. 1925, which reads as follows: "When upon the trial of any cause in any court of the Territory it shall become necessary to show the devolution of the title to land any former owner of which died intestate a decree or order of distribution duly entered by a court having jurisdiction in probate of the estate of any such deceased owner may be received in evidence, and, when so received, shall constitute *prima facie* proof of the descent of such title to the person or persons named as distributee or distributees in such order or decree, provided that such order or decree shall have been so entered not less than ten years prior to the date upon which the cause was commenced." This section was first enacted at the session of the legislature of 1923 and was Act 169 of the Laws of that session. In recommending the passage of this section, which was then senate bill 143, the judiciary committee of the senate said (Senate Journal 1923, pp. 658,659) : "The present bill (Senate Bill No. 143) provides, in substance, that when any genealogical facts are found and decreed in any probate hearing, and such findings of fact have not been attacked, for a period of ten years, such decree of the probate court may be received in any case, as evidence (but prima facie evidence merely, not conclusionary) of the truth of the facts therein found. This bill we believe to be one of merit. Kamaainas are fast disappearing and there are great numbers of titles to land which are now difficult to prove. It is, therefore, almost a necessity that a law like the present should be passed, which affects every title in the country and is exactly in line with statutes in force in other jurisdictions. The

findings of fact which are permitted to be used in evidence are not held to be conclusive, but merely make out a prima facie showing which may be rebutted, but, if no evidence is offered in opposition, the title can be established."

In reporting upon the bill the judiciary committee of the house of representatives said, (House Journal, 1923, p. 1126) : "The purpose of this bill is to permit a decree of distribution entered in an estate of a decedent dying intestate to be admitted as prima facie proof of the determination of heirship. The bill provides that no such decree shall be admitted unless it had been entered not less than ten years prior to the date upon which the cause in which it was used as evidence was commenced. Your committee believes that a decree which has stood for ten years without attack should constitute evidence of its contents. Under the laws of the Territory real estate is not administered upon. Consequently the only way to trace heirship is through the administering of personal property or by outside testimony. In a great many instances it is very difficult to secure outside testimony, and a decree of distribution entered in an estate consisting of personal property is not admissible as evidence in testimony of real property belonging to the decedent."

The reason for the enactment of the section is clear. As the years go by kamaaina testimony with reference to early family relationships becomes increasingly difficult to obtain and in some instances is well nigh unobtainable. Hence the necessity to resort, by the aid of a statute, to a class of evidence which otherwise would not be admissible under the rules ordinarily prevailing in courts. The statute would seem to be a highly desirable one in this jurisdiction and should be construed liberally in aid of the purposes for which it was enacted.

Notwithstanding these considerations, we are limited by the plain language of the provision. What is thereby declared to be admissible as *prima facie* proof of the descent of titles is "a decree or order of distribution" duly entered by a court of the kind described in the statute. A decree or order of distribution is a decree or order authorizing and directing the distribution of property to those entitled thereto. Was the so-called decree which the petitioners offered in evidence in the case at bar of this nature? Clearly, it was not. The petition before Circuit Judge Hutchinson at Lahaina in 1862 was one asking for the appointment of an administrator of the estate of Naeole, a deceased person. One Solomona was the petitioner and asked for the appointment of himself as administrator. The first question that would naturally present itself to the judge would be as to the relationship existing between Solomona and the decedent and what right, if any, Solomona had to be appointed administrator. The law in force at that time, section 1245, Civil Code of 1859 (which is still in force as section 2483, R. L. 1925), was as follows: "In the appointment of administrators upon the property of deceased persons, the following order of priority shall be observed: 1. The husband of a deceased wife; 2. The wife of a deceased husband; 3. The children being major; 4. The brothers and sisters of the deceased; 5. The cousins germane of the deceased; 6. Any *bona fide* creditor applying for administration; Provided, however, that the judge may, for satisfactory cause, disregard the order of priority herein prescribed."

The hearing upon the petition for appointment of administrator was attended by Iokepa Kahiliaukea as attorney for the petitioner and by one Kauwahi as attorney for Paele, who claimed to be a brother of the deceased. The court learned that Kahiliaukea was not li-

censed to practice in courts of record and refused to permit him to appear as attorney for the petitioner. At an adjourned session the following day, June 3, 1862, Solomona was present, as well as doubtless Paele and his attorney, although this does not clearly appear. Kamaka and Kau were both sworn as witnesses and testified in effect that Naeole died leaving no issue and no widow surviving him and leaving two brothers, Paele and Kapulehu, and a sister, Maliekapu. At the conclusion of this testimony Solomona said to the court "that the relationship of Paele, Kapulehu and Maliekapu is as stated by the above witnesses," but claimed "that Naeole Opio was adopted by the deceased" and submitted a paper in court marked "A" which, according to the notes made by the judge at the time, "purports to be a copy of a will made in 1843," the court adding that Solomona "cannot produce the will itself."

This is the substance of all of the testimony adduced and statements made to the court prior to the rendition of anything in the nature of a decision by the court. Thereupon, as the record continues, "the court declares the property of deceased to belong to the two brothers and sister of deceased in equal proportions, 1 third to each." This latter statement by the court is the so-called decree of distribution which is offered in evidence under the statute of 1923. On its face it purports to be nothing further than a mere declaration by the presiding judge that the brothers and the sister were the nearest surviving relatives of the decedent and entitled to his property and inferentially that Solomona was not a relative and was not entitled under the statute to be appointed administrator. He was not appointed administrator. No other proceedings are recorded. As far as the record shows, no letters of administration were ever issued, no administrator was ever appointed, no inventory filed and

no accounts presented by an administrator or other officer of similar authority. There was no occasion to distribute any property. No property had come into the possession of the court through its executive officer, an administrator. The concluding words of the court serve the purpose of indicating who the persons were who were entitled to be appointed as administrators and do not purport to go any further. There was no direction to anyone to distribute any property. The language of the concluding statement of the court is altogether unambiguous and cannot be construed as an order or decree distributing property to anyone. It did not constitute an order or decree of distribution within the meaning of section 2609 and therefore was properly excluded from evidence.

From the record of 1862, in the matter of the estate of Naeole, it further appears from his own testimony that Kamaka was related to the decedent and was the son of the deceased's sister and that his knowledge to the effect that Paele and Kapulehu were the brothers of the decedent came to him from his grandparents. Kau testified that he was not related to "any of the parties" and that he had learned the family pedigree "from frequent conversations with my mother who knew the family well." Is this record of the testimony of Kamaka and Kau admissible under the exception to the hearsay rule which relates to pedigrees? Quoting from *Fulkerson* v. *Holmes*, 117 U. S. 389, 397, and *Makekau* v. *Kane*, 20 Haw. 203, 205: "The proof to show pedigree forms a well settled exception to the rule which excludes hearsay evidence. This exception has been recognized on the ground of necessity; for as in inquiries respecting relationship or descent facts must often be proved which occurred many years before the trial and were known to a few persons, it is obvious that strict enforcement in

such cases of the rules against hearsay evidence will frequently occasion a failure of justice. * * * Traditional evidence is therefore admissible. * * * The rule is that declarations of deceased persons who were *de jure* related by blood or marriage to the family in question may be given in evidence in matters of pedigree. * * * A qualification of the rule is that before a declaration can be admitted 'in evidence the relationship of the declarant with the family must be established by some proof independent of the declaration itself but it is evident that but slight proof of the relationship will be required since the relationship of the declarant with the family might be as difficult to prove as the very fact in controversy." Kau's testimony expressly negatived any relationship between him and Naeole's family. Even if the exception could be extended so as to include the statement of one who is not related to the family in question and who did not obtain his information from a relative of the family and whose sole information was obtained from a mere friend of the family, for another reason, which applies equally to Kamaka's testimony, the rejection of the proffered record of the testimony must be sustained. It will be observed that under the exception now being considered it is the declarations of *deceased* persons who were related by blood or marriage to the family in question that are admissible in matters of pedigree. No evidence whatever in the case at bar was introduced tending to show that Kamaka and Kau were not living at the time of the trial. There was no evidence of long absence from the Territory or from the Island of Maui or of any absence whatever, no evidence of any inability to find them and no other evidence tending to show that for whatever reason they were then unavailable as witnesses. The mere fact that their testimony in the probate case was given in 1862 (sixty-five years ago) does

not indicate or raise the presumption that they are dead. It does not appear from the record of the estate of Naeole or otherwise in the case at bar how old these two witnesses were at the time that they gave their testimony in 1862. For aught that appears to the contrary they may have been not more than twenty-five or twenty years of age. If the former, they would be now ninety years of age, and if the latter, they would be now eighty-five years of age. While such instances cannot be said to be numerous, people do live nowadays, and in these islands as well as elsewhere, to the age of ninety and to the age of one hundred and even to an age exceeding one hundred. In this very case it appeared in evidence that Piwa, an alleged member of the family in question, lived to the age of ninety-seven. There is no presumption of law or of fact that a person who was born ninety years ago and reached maturity is now dead. The only presumption that would apply in such a case as this is the one to the contrary, that since the two men are shown to have been living in 1862 they continue to live thereafter for a reasonable time. 22 A. & E. Ency. L. 1244. There are exceptional cases where this presumption does not prevail or rather where it is outweighed by some other presumption as that of innocence. For example, see *Sato* v. *Sato*, 29 Haw. 716. But there is no conflicting presumption in this instance. Under the exception relating to pedigree testimony, therefore, the testimony of Kamaka and Kau was not admissible. In the consideration of the pedigree exception to the hearsay rule it is immaterial whether the parties in the two cases are the same or in privity with each other and whether the witnesses who testified in the earlier case were cross examined by the respondents in the case at bar or by their predecessors in interest or were available for cross-examination by them.

There is another principle, likewise arising out of

necessity, upon which former testimony is sometimes admitted. In the application of this principle it is immaterial whether the evidence does or does not relate to pedigree and whether it is given by a relative or a non-relative. But it is material that the party against whom the evidence is now sought to be introduced (or his predecessor in interest) had at the former hearing an opportunity to cross-examine the witness. In this second class of cases it is necessary, in order to render the former testimony admissible, that the witness who gave the testimony should be unavailable by reason of death or of insanity or other sufficient cause. 2 Wigmore Ev., Secs. 1401,1402; 1 Greenl. Ev. (13th Ed.), Secs. 163,164; 1 Elliott Ev., Sec. 495; *Tsuruda* v. *Farm,* 18 Haw. 434. The absence of any showing in the case at bar that Kamaka and Kau are dead or otherwise unavailable renders their former testimony inadmissible under this principle. Hall's Deposition, 11 Fed. Cas. No. 5924; *Watson* v. *Tindal,* 24 Ga. 494, 505; *Hammond's Lessee* v. *Inloes,* 4 Md. 138, 174; *Hayes* v. *Berwick,* 5 Am. Dec. 727, 728; 1 Jones Commentaries on Evidence (2d Ed.), Sec. 283.

The so-called decree of Circuit Judge Hutchinson of 1862 and the testimony of Kamaka and Kau having been all correctly excluded from evidence, there was no evidence in the case tending to show that Paele, Kapulehu and Maliekapu, or any of them, were the heirs of Naeole, the patentee. The deed of June 30, 1873, which recites in its opening sentence that it was executed by Kupalehu (Kapulehu?), Paele and Maliekapu, but which also recites upon its face that Paele and Maliekapu were dead, and which in fact was executed by Kapulehu, Maikauloa, Mahoe and Kamaka, does not contain any recital tending to show that Paele, Kapulehu and Maliekapu, or any of them, were brothers or sisters of Naeole. It says that the three were the "executors of the last will of

Naeole," that "Paele and Maliekapu are dead," that Maikauloa (w) was the daughter of Paele, that Kamaka (k) was the son of Maliekapu and that Mahoe (w) was the wife of Kapulehu, but it is absolutely silent as to the relationship between Paele, Kapulehu and Maliekapu on the one hand and Naeole on the other. Even if, therefore, this deed was admissible as evidence of the relationship of Maikauloa, Kamaka and Mahoe to Paele, Maliekapu and Kapulehu, it cannot cure the lack of evidence as to the relationship between Paele, Kapulehu and Maliekapu on the one hand and Naeole on the other.

In view of this lack of evidence a verdict in favor of the petitioners would not have been sustainable.

It was the theory and the claim of the respondents that Naeole, the patentee, had two sons, Piwa and Naeole Opio; that upon Naeole Opio's death his interest passed to Piwa; that Piwa conveyed the property to Pomaikai (k) and that from Pomaikai the title passed by descent to the respondents. In order to prove that Piwa was the son of Naeole respondents called to the stand Keoholani (w). She testified that Piwa was her father and that Mohoula was her mother; that the witness was fifty-one years of age at the time of the trial; that her father died in 1912 at the age of ninety-seven and that her grandfather on her father's side was Naeole. When asked how she knew that Naeole was the father of her father she replied, "My father told me so," and when further asked on cross examination whether her only means of knowing that Naeole was the father of Piwa was because Piwa told her so, she answered in the affirmative. Thereupon the petitioners moved to strike out all of the testimony given by Keoholani on the ground that it was hearsay and not based on the knowledge of the witness. The motion was denied and the ruling is assigned as error.

As above stated, it has been definitely held by this court in *Makekau* v. *Kane*, 20 Haw. 203, 205, that "the rule is that declarations of deceased persons who were *de jure* related by blood or marriage to the family in question may be given in evidence in matters of pedigree," that this constitutes an exception to the rule of hearsay testimony and that a qualification of the exception is that "before a declaration can be admitted in evidence the relationship of the declarant with the family must be established by some proof independent of the declaration itself," although slight proof will suffice for that purpose. This statement of the law is cited by the appellants in support of their assignment of error and by the appellees in support of the ruling complained of. These contradictory claims evidently arise out of conflicting views as to what the "family in question" is which is referred to in the statement of the exception recognized in *Makekau* v. *Kane* and in *Fulkerson* v. *Holmes*, 187 U. S. 389, 397, and in many other authorities which declare that a qualification to the exception is that before the declarations can be received the declarant must be shown to have been a member of "the family." In this instance the respondents evidently take the view that Piwa's relationship to Keoholani is sufficient, while the petitioners evidently proceed on the theory that Piwa's relationship to Naeole must first be shown. In our opinion a correct statement of the qualification under consideration is that the declarant must first be shown by evidence *aliunde* to have been related to the family concerning which he was making a declaration.

The reason of this exception to the hearsay rule is, as has often been stated by courts and text writers, founded on public convenience and necessity. Eye witnesses to facts involved in questions of pedigree are very seldom to be obtained, and great inconvenience and

injustice would follow by a strict adherence to the ordinary hearsay rule. By reason of their intimate acquaintance with each other and of their familiarity with the sudsidiary facts from which persons ordinarily gather their impressions and knowledge as to who their relatives are and by reason further of the traditions built up within a family upon detached statements and acts and omissions as to what the relationships are in that family, it has come to be regarded by courts as safe and proper to admit as evidence declarations of deceased persons concerning the relationships within the family of which he was a member, subject always to one or two other qualifications, like that of *ante litem motam,* which it will be immaterial to refer to further at this time. All of the reasons of the rule are satisfied when the declarations offered in evidence are those of one who has been shown by the testimony of a living witness on the stand to be a member of the family to which the declarations relate. When by actual testimony on the stand the declarant is shown to have been the father of the living witness and is asked who the grandfather of the living witness is, surely the declaration which is asked for is that of a member of the family to which the declaration refers. In such a case the declarations offered are not those of a mere stranger to the family; they are not those of an old-time servant or of a near neighbor who lived across the street and was intimate with the family. It is that of one clearly shown to have been a member of the family. Nor can it render the declaration inadmissible that, in addition to having shown that he was the father of the witness, it was not also shown in advance by other evidence that he was the son of the grandfather. The latter is the very fact which the declaration is desired to prove and if it has already been shown by other evidence, the importance and the necessity of admitting the dec-

laration disappears. It is not necessary in order to satis-fy the qualification under consideration that by evidence *aliunde* the declarant's connection with both ends of the family should first be shown.

Many of the authorities, in stating the qualification, speak of the declarant's relationship to "the family" without further defining what family is meant. A careful reading of them, however, leads to the conclusion, as we think, that the family intended is that to which the declarations refer and that a connection with any branch of the family is all that need be shown. A few of the authorities, however, use expressions which more directly support our view. For example: "The declarations sought to be proved must be those of a person related, either by blood or marriage, to the family to which the declarations refer, and such relationship must be established *dehors* the declarations proposed to be proved." *In Re Robb's Estate,* 16 S. E. (S. C.) 241, 242. "But a prior condition to both these is that it should be proved by some source of evidence independent of the statement itself that the person making the statement is related to the family about which he speaks." *Sitler* v. *Gehr,* 105 Pa. St. 577, 592. "When it appears by evidence *dehors* the declarations that the declarant was lawfully related by blood or marriage to the person or family whose history the facts concern," the declarations are admissible. *Northrop* v. *Hale,* 76 Me. 306, 311. "The universally recognized prerequisites to the admission in evidence of such declarations to prove matters of family history are, first, it must be proved by evidence *aliunde* the statement itself that the declarant was related to the family about which he spoke." *Overby* v. *Johnston,* 94 S. W. (Tex.) 131, 133.

"If the question be whether any or what relationship exists between two supposed branches of the same family,

it is only necessary to establish the connection of the declarant with either branch." 22 A. & E. Ency. L. 643. To the same effect is 22 C. J. 244. "Having once shewn him to be a member of the family, by matter *dehors,* you may admit his declaration as to the relationship of any member of that family with any other, or as to the question (which comes to the same thing), whether a certain person is a relation of that family." *Monkton* v. *Attorney General,* 2 Russ. & M. 147, 158 (39 Eng. Repr. 350, 355), an elaborate and instructive opinion. "It is illogical to hold that pedigree must be proved by starting at the top and coming downward instead of starting at the bottom and going upward." *Terry* v. *Brown,* 82 S. E. (Ga.) 566, 568. And on the general subject of this exception and its qualifications see 2 Wigmore Ev., c. 49, and particularly section 1491.

Piwa's declarations, therefore, were correctly admitted since by evidence *aliunde* it was shown, first, that he was dead at the time of the trial and, second, that he was related to the family about which he spoke. Judged by the same standards the record of the testimony given by Kamaka in 1862 was correctly excluded, first, because it was not shown by evidence *aliunde* that he was dead at the time of the trial and, second, because it was not shown by evidence, aside from his own declaration, that he was related to the family of which he spoke. The same is true as to the record of the testimony given by Kau in 1862; and as to him it is further to be observed, as above noted, that the record shows that he expressly testified in 1862 that he was not related to the family and knew the pedigree only from frequent conversations with his mother "who knew the family well."

Another assignment of error relates to the admission in evidence of a deed from Piwa to Pomaikai, the ground of objection noted at the trial being that there was no

132

competent evidence that Piwa had any interest in the land. This assignment is disposed of by the ruling that the evidence of Keoholani showing the relationship between Piwa and Naeole was correctly admitted.

The judgment under review is affirmed.

*A. E. Jenkins* and *Huber, Kemp & Stainback* for plaintiffs in error.

*Enos Vincent* for certain defendants in error.