DAVID S. AUSTIN *v.* CHARLES BAILEY AND E. F. BAILEY.

*Ejectment. Administrator's Lien. Adverse Possession.*

The grantee of an heir holds the land, as the heir did, subject to the administrator's lien; but, even in a case where it is shown that administration was granted upon the estate, it will be presumed, after the lapse of nine years without any interference of the administrator, that his lien has been satisfied, especially when the party denying the right of the heir's grantee is a stranger to the title.

The plaintiff was in possession of the land in controversy claiming to have bid it off at a tax sale. W. subsequently entered into possession, claiming to have paid the tax and to have a receipt therefor. They then agreed that W. should remain in possession the rest of the season, and if he did not produce said receipt he should quit, which he did in the fall without producing the receipt. *Held*, that W.'s possession was not in subjection to the plaintiff's title, therefore it broke the continuity of the plaintiff's possession.

A legal estate obtained by fifteen years' adverse possession cannot pass by mere verbal surrender.

Where the rights of both parties stand upon mere possession not yet ripened into a perfect title, he who has the prior possession has the best right; but if he abandon and surrender it to the adverse party he cannot afterwards set it up.

EJECTMENT for the northerly part of lot No. 60, 2d division in Brunswick. Trial by jury, September Term, 1863, POLAND, Ch. J., presiding.

The plaintiff claimed to have bid this lot off at a tax sale October 2d, 1845, and testified that he received a deed of it from David Hyde, the constable and collector of the town of Brunswick, in the fall of 1846 ; and that he exercised acts of ownership over it in the winter and spring following ; that in the spring of 1848, while at Woodstock attending court, Elisha Webster entered upon and took possession of said lot and fenced a portion of it ; that upon his return he, the plaintiff, turned his cattle into the lot, and informed Webster that he claimed title by the tax sale above named, and that he had a deed of the same from Hyde, the collector ; that Webster declared that he had paid the tax for which the lot was sold, and that he had a receipt for the same, and that the plaintiff and Webster then entered into an agreement by which Webster was to continue in possession the remainder of the season of 1848, and if he did not produce to the plaintiff his receipt of the payment of said tax he was to surrender up the premises to the plaintiff; that Webster never produced or exhibited such receipt, and that in the fall of 1848 he abandoned the

possession and never after claimed any right to the lot or had any possession of the same.

The plaintiff further testified that after Webster left the lot in 1848, he entered into possession and exercised acts of ownership down to 1860, when he sold and deeded the same to Joseph M. Amy; that Amy entered upon the lot and erected a small house thereon and resided there until May, 1862, when he sold and re-conveyed the same to the plaintiff; that after Amy removed from the premises, the house being unoccupied the defendants entered into possession of the house and land and have held possession of the same, and have taken large quantities of timber, wood, bark and stones from the same. The plaintiff did not produce any deed of the lot from David Hyde, the collector, and testified that the same was never recorded, but that the deed was burned in 1859, when his house was destroyed by fire.

The defendants traced the title to this half lot from 1809, when it was sold at a tax sale and conveyed by deed to Daniel Dana, down to the conveyance to E. F. Bailey, one of the defendants, in October, 1862, and gave evidence tending to prove that as early as 1823, Peter H. Gamsby, who had purchased of Charles Sperry, entered upon the north half of said lot No. 60, made some clearing, erected a log house, and resided thereon until his death about 1831 or 1832; that in March, 1830, he mortgaged the same to Asa B. Porter; that after his death and while his family were upon the premises, Solomon Heaton, under an assignment of the Peters mortgage and a purchase from the widow of Peter H. Gamsby of his interest in the premises, entered into the possession of said half lot and occupied the same till his death in 1835, and that after his decease his widow and family occupied it up to 1839, when they removed from Brunswick.

The defendants' evidence tended to prove that Peter H. Gamsby and the Heatons held uninterrupted possession of said half lot for a period of more than fifteen years. It did not appear that any person was in actual occupancy after the Heatons left Brunswick till 1844 or 1845, when Elisha Webster entered into possession of the lot under a deed from George B. Chandler, who was the assignee of Hezikiah G. Heaton, son of Solomon Heaton. Alva Heaton, the last of the Heatons to hold the title to this land, and who conveyed

to Elisha Webster May 19th, 1861, was a son of King Heaton, who died in 1854, leaving several children besides Alva, but it did not appear that they had ever claimed said land. It was shown that administration was granted upon King Heaton's estate in 1854, but nothing further was shown in relation to the condition or settlement of his estate, and it did not appear that his administrator had ever asserted any right or claim to said lot.

The defendants introduced the deed of this land from Webster to A. J. Congdon, dated July 16th, 1861, and the deed of Congdon to the defendant E. F. Bailey, dated October, 1862.

The defendants' evidence tended to contradict that of the plaintiff as to the surrender and abandonment of said half lot by Webster to the plaintiff in 1848, and to show that Webster continued to claim said lot and to execute acts of ownership thereon by turning his cattle upon it, getting wood, timber and stones from it down to the time he conveyed it to Congdon, which was shortly before his death.

No question was made but that, when the defendant, E. F. Bailey, entered into possession of said half lot in 1862, he entered under the title conveyed by Webster to Congdon, and by his authority.

The plaintiff then gave evidence tending to show that Peter H. Gamsby did not enter upon said half lot as early as 1823, and also that the Heatons left the possession of it as early as 1837 or 1838, and their united possession did not continue for the period of fifteen years. The plaintiff claimed that he had derived a good title to this half lot by an adverse possession of it from the fall of 1846 down to the spring of 1862, when the defendants entered into possession. But the court decided that the entry upon the lot by Webster in 1848 and his occupancy as stated by the plaintiff would interrupt his possession so that he has acquired no title by possession. To this the plaintiff excepted.

The court also instructed the jury that if Webster, under whom the defendants claimed, had no title except prior possession and surrendered and abandoned that to the plaintiff as he claimed, neither he nor his grantees could afterwards assert it against the plaintiff. But that if they found that Gamsby and the Heatons held uninter-

rupted possession of this half lot for a period of more than fifteen years, then it had ripened into a perfect title, and Webster holding under it would not be precluded from setting it up against the plaintiff by a mere verbal surrender and abandonment within fifteen years after such surrender.

The court also charged the jury that if they found that the united possession of Gamsby and the Heatons continued for more than fifteen years so as to create a valid title in the Heatons, then the deeds from Chandler, assignee of H. G. Heaton, and from Alva Heaton to Elisha Webster, would convey to him such an undivided interest in the premises as would enable him and his grantees to hold possession of the whole against the plaintiff, who was a stranger to that title and had attained no valid title by possession against it,—to which the plaintiff excepted.

Verdict for the defendants.

*G. N. Dale* and *J. Ross*, for the defendants, cited 2 Washburn's Real Property, p. 453, *et seq.*; 2 Smith's Lead. Cas. 470–474; *Doolittle* v. *Linsley*, 2 Aik. 155; *Hathaway* v. *Phelps*, *ib.* 84; *Warner, Adm'r,* v. *Page*, 4 Vt. 291; *Reed, Adm'r,* v. *Shepley et al.*, 6 Vt. 602; *Patchin* v. *Stroud*, 28 Vt. 394; *Hyde* v. *Barney*, 17 Vt. 280; *Crowell* v. *Bebee*, 10 Vt. 33; *Cushman, Adm'r,* v. *Jordon*, 13 Vt. 597; 1 Swift, 447; *Mattocks* v. *Stearns & Wife*, 9 Vt. 326; *Cox* v. *Ingleston*, 30 Vt. 258; *Roberts* v. *Morgan*, 30 Vt. 320.

*H. Heywood*, for the plaintiff.

ALDIS, J. I. The heir upon the death of the ancestor has a vested interest in the estate which he may immediately convey by deed. 3 Vt. 207; 17 Vt. 280. The grantee by the deed gets the title of the heir and stands in his place. He holds the land as the heir did subject to the lien (if any) of the administrator. To protect this lien the statute provides (G. S. p. 391, § 14) that when an administrator shall be appointed and assume the trust no action of ejectment shall be maintained by any heir until (1) there shall be a decree of the probate court assigning such lands to such heir, or (2) the time allowed for paying debts shall have expired, or (3) the administrator shall voluntarily surrender possession to the heir.

In this case the title (as the jury must have found) became vested in the Heatons. King Heaton, who thus was the owner of a part

Austin *v.* Bailey et al.

of the land, died in 1854, leaving several heirs.   One of them, Alva, deeded the land to Webster under whom the defendant claims.   The interest of the heir thus passed to the defendant.

The defendant E. F. Bailey, being in possession sets up his title derived from Alva Heaton.   The plaintiff shows that King Heaton, the father of Alva, died in 1854, and that an administrator of his estate was appointed; but nothing further was shown, and it did not appear that the administrator had ever asserted any right or claim to the lot.

Upon this single fact, that administration of King Heaton's estate was granted in 1854, the plaintiff claims that the defendant cannot set up his title derived from Alva Heaton.   This goes upon the ground that he cannot sue in ejectment, and if so, cannot defend in ejectment by setting up that title upon which he could not sue. Without stopping to consider whether this conclusion is legally derived from the premises, it is sufficient that we hold that upon the facts stated he would not be precluded from suing in ejectment.

1. The defendant E. F. Bailey, was in possession of the premises when the plaintiff brought this suit.   There is nothing to show that he was not in possession by the consent,—" the voluntary surrender " of the administrator.   Possession will not be presumed to be wrongful,—but on the contrary, in the absence of all proof, will be attributed to a lawful origin.

2.   The statute provides (G. S. p. 404, § 29) that the time to be allowed by the probate court for the payment of debts shall not in the first instance exceed one year from the time of granting letters of administration.   Without proof we cannot presume that the probate court either exceeded the law or extended the time.

Here nine years have passed since the granting of letters of administration, so it may well be presumed that the time allowed for paying debts has expired.   The period to which the probate court can extend the time for paying debts may not exceed three years and six months.   G. S. ch. 53, §§ 29, 30, 31.

In the case *Hubbard* v. *Ricart,* 3 Vt. 207, the court held that the grantees of the heirs could sue in ejectment within two years after the granting of administration.   There having been no interference by the administrator, his lien was presumed satisfied after a lapse of

two years.   In that case as in this the party denying the right of the heir's grantee to the land, was a stranger to the title.   If it were the administrator or a creditor of the estate that denied the right of the heir, the court would perhaps have more hesitation in presuming the lien of the administrator satisfied.

II.   The entry of Webster and his occupancy of the lot in 1848 was in his own right and under a claim of title.   It continued through the season and excluded the plaintiff.   This was clearly an interruption of the plaintiff's possession.

The adverse possession which gives title must be continuous for fifteen years.

It is urged that Webster's possession in 1848 was by agreement with the plaintiff and virtually in subjection to the plaintiff's title. But the plaintiff's testimony even does not sustain this view.   He says Webster claimed that he had paid the tax upon which the plaintiff claimed he had bid the lot off at the tax sale.   Thus their claims were hostile.   They then agreed that Webster should remain in possession the rest of the season, and if he did not produce his receipt for the payment of the tax he was to quit the premises at the end of the season.   In the fall he quit without producing the receipt.

This agreement and Webster's failure to produce the receipt (which upon this point we assume to have been as the plaintiff testified) shows that Webster's possession was without right, but not that it was in subjection to the plaintiff's title.   There is no agreement to hold under the plaintiff, no payment of rent in any form, no recognition of his right; on the contrary there is persistency in the hostile claim till the end of the season.   During this period the plaintiff was out of possession and by his own agreement was to remain out till fall.

The court properly held that this interruption broke the continuity of the plaintiff's adverse possession, so that he could not tack his prior to his subsequent possession to make out the fifteen years.

III.   If Gamsby and the Heatons had acquired title by fifteen years of adverse possession, such title thereby became perfect, and was as good as a paper title by the record from the original proprietors.   It was no longer a mere possessory right.   It had ripened into

a legal estate in fee in the land. This being so it is quite obvious that such an estate, such a title, cannot pass by mere verbal surrender.

IV. The ruling of the court, that Webster's prior possession of the lot for two or three years before the plaintiff's entry upon it would prevail over the defendants' subsequent possession for less than fifteen years, unless Webster gave up and abandoned his possession, stands upon a long established principle of the law. Where the rights of both parties stand upon mere possession not yet ripened into a perfect title, he who has the prior possession has the best right. The qualification of the rule, that if the party having the prior possession abandon and surrender it to the adverse party he cannot afterwards set it up, was fully explained to the jury.

Judgment affirmed.