## PAULO *vs.* D. MALO.

EJECTMENT.    BEFORE AUSTIN, J.

MAY, 1883.

Adverse possession held to be proven by cultivation of the land and pay-
ment of taxes: and the fact that defendant took out a Royal Patent
for the. land, in the name of plaintiff, held not to be an admission of
plaintiff's title.

DECISION OF AUSTIN, J.

The plaintiff in ejectment established presumptive title as
heir to the patentee Kea.

The defense has claimed title by adverse possession.

The plaintiff attacks first the character of the possession itself.
He says it was not continuous or complete, and is for that reason
insufficient.

To determine this point, the amount and nature of the land
are to be considered.   It consists of two and 45-100ths acres,
mainly taro patches.   There is a small part of it not adapted
or used for kalo culture.   The land was not fenced till lately.
At one time a grass house was built on the land which was
occupied by defendant and his father and his aunt, under
whom he claims.   This house was pulled down, but the proof
establishes, I think, a substantial continuous cultivation of the
taro land and occasional cultivation of the other land for
potatoes.

The whole land is small.   Only scraps of it, from time to
time, were left idle.   I think it may be found that the land was
usually cultivated or improved.   This is sufficient as to the kind
of possession.

See Washburn on Real Property, Vol. 3, 140-1-9-150.

The defendant and those under whom he claims paid taxes
on the land for over twenty years.   The character of their acts
and possession may be taken as notice to the owners of a claim

of title. Express notice is not necessary to be shown. See authorities last cited.

The defendant's aunt Kahawalu, under whom defendant claims as her remote heir through his father Kalama, died in 1871; whatever rights she then had descended to her brother Kalama. Her husband, Hoohoku, took no interest from her under the then statute. Kalama retained the possession and transmitted it to the defendant; privity is shown by him with Kalama and with Kahawalu.

I therefore think that title by adverse possession is made out by the defendant, unless other facts shown, to which I shall now refer, establish that the possession was not adverse, but in subserviency to the title of the plaintiff.

Kea, the patentee, died in 1849, in possession of the land in dispute and having been in possession since 1839. It was declared to have been his land on February 3d, 1848.

Kahawalu, widow of Kea, held possession after his death till some time in 1854. We have held that she had no right to the possession as widow. What was her intention in so holding possession may be inferred by her subsequent acts.

In 1854 she and her brother Kalama made application before the Land Commission, and the land was awarded to Kea by name, and his heirs. Subsequently, in 1856, Kahawalu obtained in the name of Kea a Royal Patent running to Kea and his heirs. This she received and kept. It remained in her possession till her death and was transmitted to her heir Kalama, who held it till 1877 when defendant claims it was taken away by some party in plaintiff's interest.

The plaintiff's counsel earnestly claims that these facts show a subserviency to the title of the heirs, and dispute all claims to hold the land adversely.

Upon the first trial of this case I was inclined to so decide. But further examination and reflection have led me to modify my opinion.

In order to establish any valid title to the land, the statute of 1845 provides that it was necessary that an award should be made; that otherwise the land would escheat.

By applying for the award to Kea in 1854, Kahawalu did not intend to acknowledge the title of the plaintiff or his ancestors. That application was not made for their benefit, but for her own, and to prevent the escheat of the land. It was in effect a claim that she was entitled to the property as heir, and that there were no other heirs. The heirs did not appear before the Land Commission, nor was any proof made before it of their existence.

Had the matter rested with them, the statute Sec. 8, p. 109, Laws of 1845, declares that all their claim to this land would have been forever barred. The first time the heirs of Kea, under whom the plaintiff claims, made known their claim was in 1872, twenty-four years after the death of Kea. Kahawalu, it would seem, though erroneously, relied on the Royal Patent as a muniment of her title. Its possession by her under the circumstances cannot be taken as an admission of the plaintiff's title. But for the Statute of 1845, the possession taken by Kahawalu in 1848 would have ripened into a title before her death in 1871. By procuring the Award and Royal Patent as stated, she did not take away all chance of her maturing a title to the land. The statute is peculiar to this country, and no similar question could arise in England or in the United States.

I hold that the defense of the Statute of Limitations is made out, and direct that judgment be entered in favor of the defendant with costs.

*W. R. Castle,* for plaintiff.

*R. F. Bickerton,* for defendant.

Honolulu, May 1st, 1883.