*Prosser, Anderson & Marx* and *S. E. Hannestad* for defendant.

---

## LEIALOHA (k), LAHAPALIILII BUSH AND JOHN F. COLBURN v. EDWARD H. F. WOLTER.

ERROR TO CIRCUIT COURT, FIRST CIRCUIT.

ARGUED JUNE 17, 1913.                    DECIDED JULY 1, 1913.

ROBERTSON, C.J., PERRY AND DE BOLT, JJ.

ADVERSE POSSESSION—*continuity of.*

In order to perfect title by adverse possession, such possession must be continuous for the whole period prescribed by the statute of limitations. Any break or interruption of the continuity of the possession will be fatal to the claim of the party setting up title by adverse possession.

ID.—*break or interruption of continuity.*

Where, in an action of ejectment, the defendant relied upon the statute of limitations, and the evidence was, that the improvements on the premises were destroyed by fire; that the premises

Leialoha (k) v. Wolter, 21 Haw. 624.

were then quarantined by the board of health; that during the quarantine the plaintiffs and the defendant were excluded from the premises; that from and after the removal of the quarantine the premises remained vacant, unenclosed and unused for a period of about two and one-half years, when the defendant resumed possession. Held, that the interval of two and one-half years which elapsed between the date of the removal of the quarantine and the date on which the defendant resumed possession of the premises constituted a break or interruption in the continuity of possession and was fatal to the defendant's claim of title by adverse possession.

EVIDENCE—*burden of—adverse possession.*

The burden of proving adverse possession on the part of the defendant rests upon him, and it is immaterial in the application of this rule whether the plaintiff has acquired title by deed or by prior adverse possession.

## OPINION OF THE COURT BY DE BOLT, J.

This is a writ of error to the circuit court of the first circuit to review a judgment entered in an action of ejectment, wherein Leialoha, Lahapaliilii Bush and John F. Colburn (the defendants in error), were plaintiffs and Edward H. F. Wolter (the plaintiff in error), was defendant.

The plaintiffs Leialoha and Lahapaliilii Bush claim title to the premises in controversy in fee simple by inheritance from their ancestors and predecessors in title, who, it is claimed, acquired title by adverse possession, and the plaintiff Colburn claims the right to possession of the premises by demise from the other two plaintiffs. The plaintiffs adduced evidence tending to establish their claim of title. The defendant contends, however, that the evidence was insufficient to establish title in the plaintiffs and that in any event he was entitled to judgment for the reason that he had maintained complete, exclusive and adverse possession of the premises against the plaintiffs and their predecessors in title for the statutory period of ten years next preceding the commencement of the action of ejectment, which was begun on August 19, 1910.

This is the second occasion on which this case has been before us. On the former occasion the case was brought up on a writ of error sued out by the plaintiffs (the present defendants in error) to review a judgment of nonsuit entered against them. That judgment was reversed and the cause remanded for a new trial. A new trial upon the merits was then had (jury waived), and judgment was entered for the plaintiffs for the recovery of the premises. To reverse this judgment the defendant (the present plaintiff in error) sued out the writ now before us for consideration.

The evidence adduced by the plaintiffs at the second trial was substantially the same as that adduced by them at the first trial, except as to probate record No. 1447, re estate of Kahoowaha, deceased, which the plaintiffs offered in evidence at the first trial for the purpose of showing that Kahoowaha died in or about the year 1862, intestate, leaving as an estate Apana 2, L. C. A. 30, R. P. 1809 (which includes the premises in controversy), and that on January 6, 1865, Umiumi, a brother, and Mauliawa, a nephew of the deceased, were decreed to be the heirs at law of Kahoowaha and that distribution was made to them accordingly, but the court, upon objection by the defendant, declined to receive the record in evidence. At the second trial, however, the court admitted the record in evidence, but confined it to the purpose of showing color of title in Umiumi and Mauliawa. The record also shows a quitclaim deed from Umiumi to Mauliawa bearing date January 23, 1865.

For a detailed statement of the facts of plaintiffs' side of the case, as disclosed by the record in the first trial, reference may be had to the opinion of this court heretofore rendered in this case. Ante 304.

The premises in controversy consist of an "L" shaped parcel of land extending along the Waikiki and mauka sides of a rectangular piece of land, the property of the defendant, which is near the business center of Honolulu. It appears that the defendant in 1897 or in 1898 erected a building on his land, which

building covered the whole of his property. At the time his building was being erected the defendant claims that he took possession of the premises in controversy, enclosed them with a fence and used them in connection with his building. The plaintiffs dispute this and contend that their predecessors in title were in actual possession of the premises during this period.

As to this phase of the case, covering the period from 1897 to January 20, 1900, the trial court in its decision said: "From the year 1897 until the great fire of January, 1900, the evidence concerning the occupation of the land in dispute is contradictory. At least three of the witnesses for the plaintiff testify that the buildings occupied by Oili and Mauliawa remained on the land as designated by them until destroyed by fire. The defendant insists that when he erected a building on the saloon premises in 1898 he put up a fence around the boundaries of the land in dispute and that the fence and building remained until the fire of 1900, when they were destroyed, and his witnesses testify in support of this contention."

It appears that very soon after the great fire of 1900 the premises in question were fenced off—in effect quarantined— by the board of health, thereby excluding the plaintiffs and the defendant from actual possession.

The defendant claims that as soon as the quarantine was terminated and the fence, which the board of health had erected around the premises was removed by the authorities, he erected a temporary fence around the premises, thus enclosing the property as it was before the fire. In respect to the testimony of the defendant upon this aspect of the case the trial court in its decision said:

"There is much confusion in the testimony of the defendant concerning his action after the fire. He said that the board of health took possession of the entire lot by putting up a board fence; that 'Right after the fire I put the same kind of a building, in 1901. The fire was in 1900.' Immediately after the

fence was taken down by the board of health he 'immediately went over the place again and put up a fence.' 'I had a fence put on the same line again as it is; as it was before and as it is now.' 'I should surmise it would be nine months, eight or nine months.' (After the fire). 'I put up the present building in 1901 and had the fence put up by a native at the same time.' Repeated questions as to when the temporary fence was erected with regard to the construction of the building failed to elicit any answer. Finally he said, 'It couldn't have been more than three weeks at the highest when I put up the temporary fence; when I threw all the lumber there, piled inside, got it inside, and after I got the building up I had a fence put the same as you see it there today.' The defendant fixed the period of the erection of the new building from November, 1901, to January, 1902; he also said that the temporary fence was put up about eight months after the fire. November, 1901, would be 22 months after the fire, and three weeks before the commencement of the building operation would place the erection of the temporary fence somewhere in October, 1901, if the testimony is correct as quoted above. It appears also that the defendant is in error as to the period during which the building was erected, as there is very strong evidence that the building was not completed until some time in the early part of the year 1903. * * * * The condition of affairs from January, 1900, up to the erection of the building is not shown with any degree of certainty as to dates. The preponderance of the evidence seems to be against the defendant and points to a serious error on his part; namely, the time when the building was erected, which, in turn, fixes the other events. I am unable to say that the defendant has sustained the burden of showing a continuous, complete and adverse possession of the property in dispute for the statutory period."

Whether or not the period following the fire during which the premises were held in quarantine should be counted in favor of the defendant need not be decided. The evidence of the defendant was such that the court could have found from it that the quarantine was terminated about July, 1900; that the defendant did not resume possession of the premises until about the beginning of 1903; and that during that interval of about two and one-half years the premises were vacant, unenclosed

and unused. So far as the evidence shows, there was nothing to prevent the plaintiffs from taking possession. There being no actual possession during the period mentioned, the constructive possession reverted to the true owners—the plaintiffs.

To establish his claim of title by adverse possession it was incumbent upon the defendant to show ten years of actual and continuous possession. The land in question is business property, near the center of business in the city of Honolulu, and is susceptible of definite control within exact boundaries, and the defendant, in order to maintain the adverse character of his possession, as soon as was reasonably practicable after the removal of the quarantine, should have entered upon the premises and reestablished actual possession thereof. The failure on the part of the defendant to show that he had maintained actual possession of the premises during the period referred to justified the conclusion that the continuity of possession following the removal of the quarantine had not been proven by him.

The errors assigned by the defendant are: "1. The court erred in rendering decision in favor of the plaintiffs against the defendant, and granting judgment in favor of the plaintiffs against the defendant; 2. The court erred in deciding that 'from the year 1897 until the great fire of January 1900, the evidence concerning the occupation of the land in dispute is contradictory;' 3. The court erred in deciding that 'there is much confusion in the testimony of the defendant concerning his action after the fire;' 4. The court erred in deciding that the 'erection of the fence was either in October 1902 or October 1900;' 5. The court erred in deciding that it did not appear how long the quarantine of the board of health continued; 6. The court erred in deciding that the defendant should have shown how long the quarantine of the board of health continued, and in refusing to take judicial notice of the existence of the quarantine; 7. The court erred in deciding that 'the preponderance of the evidence seems to be against the defendant;' 8. The court erred in its holding that the defendant must sustain the burden of showing

a continuous, complete and adverse possession of the property in dispute for the statutory period."

Assignments 1, 2, 3, 4, 5, 6 and 7 may be disposed of without further comment.

Assignment 8, that "The court erred in its holding that defendant must sustain the burden of showing a continuous, complete and adverse possession of the property in dispute for the statutory period," is without merit.   As to this question, counsel in their brief say:   "At the outset this proposition must not be taken as disputing the general rule that the burden of proving an adverse possession is on the party alleging it, but it is insisted that the rule requiring the burden of the party alleging adverse possession has application only when such adverse possession is claimed against one having real ownership by deed title.   And the defendant contends that where both plaintiff and defendant claim title through adverse possession, the general rule of the burden of proof applies, to-wit, that the burden of proving the cause of action rests with the plaintiff having the affirmative throughout the entire case."

Counsel cite no authority in support of their contention nor have we found any.   The fact that the plaintiffs' predecessors in title acquired the premises in question by adverse possession, and not by deed, has nothing to do with the order or burden of proof, and in no way affects the validity of the title.   The title is as perfect as if it had been conveyed by deed.   "By adverse possession of land for the statutory period of limitation the adverse holder acquires a title in fee simple which is as perfect as a title by deed.   Its legal effect is not only to bar the remedy of the owner of the paper title, but to divest his estate and vest it in the party holding adversely for the required period of time, so that he may maintain an action of ejectment for the recovery of the land even as against the holder of such paper title who has ousted him."   1 Am. & Eng. Ency. Law, 2d ed., 883, 886.

We find no error in the record. The judgment of the circuit court, therefore, is affirmed.

*J. W. Russell* (*Thompson, Wilder, Watson & Lymer* with him on the brief) for plaintiff in error.

*W. C. Achi* and *N. W. Aluli* for defendants in error.