## OAHU RAILWAY & LAND COMPANY *v.* KOLOHANA KAILI.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

HON. T. B. STUART, JUDGE.

ARGUED JUNE 21, 1915.                           DECIDED JULY 27, 1915.

ROBERTSON, C.J., WATSON AND QUARLES, JJ.

ADVERSE POSSESSION—*declarations of person in possession—res gestae.*
　　In an action of ejectment, the defense being adverse possession, the declarations of the party in possession of the land as to the nature of his claim are admissible as part of the *res gestae* and as tending to prove hostility of claim, but statements as to the source of claim or manner of acquiring the possession, being narrations of past transactions, are not so admissible.

SAME—*declarations made after expiration of statutory period of limitation.*
　　It is no objection to evidence of declarations admissible as part of the *res gestae* that they were not shown to have been made before the expiration of the statutory period of limitation.

SAME—*evidence sustaining burden of proof of hostility of claim.*
　　Where one is shown to have been for the statutory period in actual, open, notorious, continuous and exclusive possession of land, apparently as owner, and such possession is unexplained, the presumption is that such possession was hostile.

SAME—*acceptance of lease by party claiming title by adverse possession from disseizee.*

The rule is that while a recognition of title of the true owner by the one who has acquired title to land by adverse possession upon the completion of the statutory period will not alone defeat the title so acquired such recognition is evidence to be considered in determining whether the prior possession of the adverse claimant was in fact adverse.

SAME—*continuity of possession—recognition of superior title.*

Interruption of the continuity of possession occurs when the adverse claimant recognizes the title of the true owner.

EVIDENCE—*instruments requiring to be stamped.*

The admission in evidence of an unstamped instrument required by law to be stamped, where it has been used by the trial court as the basis of a finding of fact or conclusion of law, is error.

APPEAL AND ERROR—*jury waived case—erroneous admission of evidence.*

Reversible error appears where it is shown that the decision of the circuit court in a jury waived case was based partly upon assumed facts of which there was no evidence or which were attempted to be shown only by evidence improperly admitted over objection, and the evidence on the main issue was conflicting.

SAME—*exceptions in jury waived case.*

Exceptions, in a jury waived case, to an oral decision of the court, and to the overruling of a motion for a new trial which was made before the written decision was filed, present nothing for the consideration of the appellate court.

OPINION OF THE COURT BY ROBERTSON, C.J.

(Quarles, J., dissenting.)

This is an action of ejectment in which the plaintiff seeks to recover the possession of a parcel of land containing an area of 3.27 acres, situate at Honouliuli, city and county of Honolulu. The plaintiff proved the paper title to the land showing title in itself under a lease for a term of fifty years commencing January 1, 1890, made by James Campbell, as lessor, to B. F. Dillingham, as lessee, dated November 19, 1889, and assigned to it on December 12, 1889. The assignment reserved certain portions of the demised premises, including the land in dispute, the portions reserved having been released to the plaintiff by quitclaim deed dated March 23, 1892. The defense was adverse

possession based on and following an alleged parol exchange of lands between Campbell and a woman named Kamai in 1878 or 1879. Kamai married the defendant in 1908, and died in 1912 leaving the defendant as her sole surviving heir. The case was tried jury waived and decided in favor of the defendant. The plaintiff brings exceptions.

Exception 2. The defendant was allowed to testify over the objection of the plaintiff that Kamai "told me that she made an exchange with Mr. James Campbell in which she got this land now in dispute." The testimony was admitted upon the theory that it was within the well established exception to the rule against hearsay in favor of *res gestae* declarations. It is settled in this Territory, in accordance with the rule in most of the States, that the declarations of a person in possession of land as to the nature of his claim go to characterize his possession, are part of the *res gestae,* and tend to prove the hostility of claim necessary to an adverse holding. *Carter* v. *Lulia,* 16 Haw. 630; *Makekau* v. *Kane,* 20 Haw. 203. But it is also well settled that declarations which are but narratives of past occurrences are not admissible as part of the *res gestae.* 16 Cyc. 1258; 1 Greenleaf on Evidence, Sec. 110. Declarations which are but statements as to the source of claim or manner of acquiring possession of land are narrations of past transactions and are not to be considered as merely characterizing the possession and, therefore, not of the *res gestae.* 24 A. & E. Enc. Law (2nd ed.) 691; *Daffron* v. *Crump,* 69 Ala. 77, 80; *Ray* v. *Jackson,* 7 So. (Ala.) 747; *Whitaker* v. *Whitaker,* 157 Mo. 342, 354; *Swope* v. *Ward,* 185 Mo. 316, 329; *Samaha* v. *Mason,* 27 App. Cas. (D. C.) 470, 477; *Murray* v. *Cone,* 26 Ia. 276; *Crawford* v. *Crawford,* 60 Kan. 126; *Feig* v. *Meyers,* 102 Pa. St. 10, 16. And see *Makekau* v. *Kane,* supra. Accordingly it was held in *Wilkinson* v. *Bottoms,* 56 So. (Ala.) 948, that evidence of a declaration that there had been a parol exchange of lands was inadmissible. Though there are cases in which a contrary view has been taken, the application of the rule in accordance with the cases cited

would seem to be the logical and consistent one. It is not at all necessary, in establishing a title by adverse possession, to prove that declarations were made by the person or persons in possession of the land, and no good reason is perceived why the rule as to *res gestae* should be relaxed or extended in cases of this kind. This exception is sustained.

Exceptions 3, 4 and 5. These relate to the admission in evidence of certain leases of portions of the land in dispute claimed to have been made by Kamai, as lessor, and offered evidently for the purpose of showing acts of ownership and claim of title by Kamai. The plaintiff objected to the admission of the documents because they were not stamped. The statute (R. L. 1915, Sec. 1352) provides that "No instrument requiring to be stamped shall be * * * of any validity in any court of this Territory unless the same shall be properly stamped." Leases are required to be stamped. It is the duty of the trial judges to heed and give effect to this mandate of the legislature. This court probably would not reverse a judgment of the circuit court because of the admission in evidence of an unstamped instrument, which the law requires to be stamped, where it had not been used as a basis for any finding of fact or conclusion of law; but here, the record shows, the leases in question were considered by the court and entered into its conclusion that the defense of adverse possession had been made out. Thus they were given validity in violation of the statute. Under the statute the leases were not evidence, and the court's considering them as such was error. This court has not heretofore been called upon to construe or apply the statute, though in the case of *Makainai* v. *Goo Wan Hoy,* 14 Haw. 607, which involved the federal war revenue tax of 1898, the refusal of the trial court to admit in evidence certain promissory notes which were not properly stamped was sustained. These exceptions are sustained.

Exceptions 7 and 10 relate to the admission of the testimony of the defendant and another witness to the effect that Kamai, while in possession of the land in dispute, stated to them that

the land was hers. The testimony was properly admitted as declarations characterizing the possession, and of the *res gestae*. *Carter* v. *Lulia,* supra. It is no objection to the admissibility of such declarations that they were not shown to have been made before the expiration of the statutory period of limitation. *Cannon* v. *Stockmon,* 36 Cal. 535,. 541. These exceptions are overruled.

Exceptions 20 and 21, which were to the decision and judgment on the grounds that they were contrary to the law and the evidence, and which involve also exceptions 6, 8, 9, 11, 12, 13, 14 and 15, relating to the admission of testimony as to the leasing of the land and the payment of taxes by Kamai, may be considered together. On the question of the defendant's claim of title by adverse possession the court, in sustaining it, took into consideration, besides the facts of open and notorious possession of the land by Kamai for more than twenty years, which was the period of limitation at the time referred to, and the making of improvements by her, the facts that she "claimed she got it by an exchange with Campbell," that "she paid the taxes—her husband says that she paid the taxes all the time," that "she did bring in a few (tax) receipts," and that "she leased the land frequently."

The contention of counsel for the plaintiff that where there is no direct evidence that the possession of one of the land of another was hostile in its inception it must be presumed to have been in subordination to the title of the true owner is not sustained. Actual, open, exclusive and continuous possession of land by the claimant, apparently as owner, is evidence of a hostile entry and claim. *Kapiolani Estate* v. *Cleghorn,* 14 Haw. 330, 337. The rule was thus stated in the case of *Albertina* v. *Kapiolani Estate,* 14 Haw. 321, 325, "While it is true that the burden is on the party affirming the existence of adverse possession to show that his possession is in fact adverse, it is also true that where one is shown to have been for the statutory period in actual, open, notorious, continuous and exclusive possession,

apparently as owner, and such possession is unexplained, either by showing it was under a lease from, or other contract with or otherwise by permission of the true owner, the presumption is that such possession was hostile."

But, as above pointed out, the evidence of Kamai's declaration that she had acquired the land through an exchange with Campbell was improperly admitted, and there was no other evidence of such an exchange. The declaration should not have been regarded by the court as tending to support the defendant's claim. The fact that a parol exchange had been made, if it was a fact, could have been proven by proper evidence, but not by a hearsay statement. Payment of taxes may be shown in support of a claim of title to land by adverse possession. *Paulo v. Malo,* 6 Haw. 390. And we assume that the payment of taxes may be testified to by any one cognizant of the facts. But over the objection of the plaintiff the defendant was allowed to testify that Kamai paid taxes on the land though it did not appear that he was cognizant of the facts, and he admitted that he did not know how long or how often she paid them. The tax records which were put in evidence did not show that Kamai had been assessed for taxes on the land in dispute, and there was evidence in the case tending to show that she owned other land. The defendant did not testify, as the trial court found he did, that Kamai "paid the taxes all the time." No receipts for taxes paid were produced. The finding of fact that Kamai paid the taxes on this land was not supported by the evidence. The leases made by Kamai, above referred to, bore dates in the years 1908, 1911 and 1912, and, pursuant to a provision contained in a lease made between the plaintiff and Kamai in 1902 (which will be adverted to presently) the rents were collected from the tenants by the plaintiff, one-half thereof being retained by it as rental payable by Kamai under her lease, the other half being paid over to Kamai. These facts, which were undisputed, did not support the finding made by the trial court that "the lessees are all in possession acting under her as the owner of the land."

The defendant testified, over objection, that Kamai made some leases prior to those allowed in evidence, but it did not appear when they were made or whether the plaintiff collected and shared the rents. Whether the fact that Kamai had made other leases would tend to support the contention that her possession was under claim of title in fee in herself would depend upon the circumstances as to the time when and the conditions under which they were made. The documents were said to have been lost and their contents were not before the court. The bare fact that Kamai had made leases was therefore irrelevant. As above stated, the court based its decision partly upon the fact that Kamai had made leases of the land.

In a jury waived case the improper admission of evidence which does not appear to have been relied on by the trial court in arriving at its conclusion, the decision being amply supported by other evidence, will not ordinarily require the reversal of the judgment. *Aiona* v. *Ponahawai Coffee Co.,* 20 Haw. 724, 728. But reversible error appears where, as here, the decision of the court was based partly upon assumed facts of which there was no evidence in the case or which were attempted to be shown by evidence improperly admitted over objection, and the evidence on the main issue was conflicting.

The plaintiff introduced in evidence in rebuttal a lease of the land in dispute from the plaintiff to Kamai dated December 29, 1902, for the term of her natural life. The circuit court refused to consider it as evidence in the case, holding that as the statute had previously run in Kamai's favor, it was void for want of consideration, and said that if necessary it would hold it "void for fraud on the part of Von Holt," the plaintiff's agent. There was no evidence of fraud on the part of the agent of the plaintiff who negotiated the lease in its behalf. The rule is that while a recognition of title of the true owner by the one who has acquired title to land by adverse possession upon the completion of the statutory period will not alone defeat the title so acquired, "such recognition is evidence to be considered in

determining whether in fact the prior possession of the adverse claimant was in fact adverse or a possession in subordination to the title of the true owner." 2 C. J. 102; *Sage* v. *Rudnick,* 67 Minn. 362; *Walling* v. *Eggers,* 104 S. W. (Ky.) 360; *Barrett* v. *McKinney,* 93 S. W. (Tex.) 240. The court below erred in not considering the lease in question in that connection at least. These exceptions are sustained.

Counsel point out that there was evidence in the case given by Von Holt, and uncontradicted by any other evidence, that at a time when the plaintiff contemplated using this land for its own purposes, Kamai had asked and was granted permission to continue to live on the land and to rent to others a portion of it which she did not need for her own use, and they contend that she thereby recognized the superior title. Continuity of possession is, of course, one of the essential requirements in a claim of adverse possession. *Leialoha* v. *Wolter,* 21 Haw. 624. And "Interruption of the continuity necessary to acquire title by prescription occurs when the adverse claimant recognizes the title of the disseizee." 2 C. J. 101; *Campau* v. *Lafferty,* 43 Mich. 429; *Olson* v. *Burk,* 94 Minn. 456; *Williams* v. *Scott,* 122 N. C. 545; *McMahill* v. *Torrence,* 163 Ill. 277; *Paton* v. *Robinson,* 81 Conn. 547, 551; *Browneller* v. *Wells,* 109 Iowa 230; *Jackson* v. *Cuerdon,* 2 Johns. Cas. 353. But the terms of the alleged arrangement, the time when it was made, whether it amounted to a recognition of title, and the authority of Von Holt in the premises (for it seems as though the title was in Dillingham at the time) were left in much uncertainty. The witness was not closely examined on the subject. If there were nothing else in the case requiring a reversal the judgment could not be disturbed on this point.

Exceptions 17 and 18, to the "oral" decision of the court, and exception 19, to the overruling of a motion for a new trial which was made before the written decision was filed, present nothing for the consideration of this court. See *Nahaolelua* v. *Heen,* 20 Haw. 613, 616.

O. R. & L. Co. v. Kaili, 22 Haw. 673.

The remaining exceptions require no comment. They are overruled.

The decision and judgment of the circuit court are vacated and set aside, and a new trial is granted. Case remanded.

*A. M. Cristy* (*Frear, Prosser, Anderson & Marx* on the brief) for plaintiff.

*N. W. Aluli* (*E. K. Aiu* with him on the brief) for defendant.

#### DISSENTING OPINION OF QUARLES, J.

In my opinion the admission in evidence of the declaration of Kamai, made in her lifetime, to the effect that she received the land in controversy from James Campbell in exchange for other lands, was not error, or, if it was, was not prejudicial error, and not such as justifies the granting of a new trial. Many of the authorities cited on this point in the majority opinion do not relate to actions of this kind. 16 Cyc. 1258, referred to in support of the rule announced in the majority opinion, clearly relates to cases in which a contract relied on for a recovery was sought to be proven merely by the declaration of an interested party as to the substance of the contract. 24 A. & E. Enc. Law (2nd ed.) 691, cited in the majority opinion, says: "Declarations as to the source or manner of acquiring title, as, for instance, the contract under which title was acquired, are narrations of past transactions and are inadmissible." To sustain the text the author, in note 3, cites a large number of authorities which I have carefully examined. A careful reading of those authorities shows that a large majority of the decisions relate to the possession or title to chattels where a party claimed title, not by adverse possession but by gift or purchase from another, and the declaration of the donee or vendee was relied on to prove the sale or gift, which, of course, cannot be permitted. Two States have gone to the extent of holding that in ejectment where a party relies upon adverse possession and offers declarations of his predecessor made while in possession

of the land as to his claim of ownership, a declaration that he got the land from the owner by purchase or exchange was inadmissible for any purpose, being a narration of a past transaction, viz., Alabama and Missouri.   In *Dothard* v. *Denson,* 72 Ala. 541, which was a statutory action in the nature of ejectment, the court at page 544 said:  "The declarations of Denson, that he bought the land from Pettitt, and of the price he paid, were inadmissible.   The declarations of a party in possession of property, real or personal, explanatory of the possession, are received in evidence on the principle of *res gestae.*—1 Brick. Dig. 843, §§558-59.   But his declarations merely narrative of past transactions, or respecting the source of the title, or the contract by which possession was, acquired, are inadmissible.—*ib.,* 843, §560."   This was followed in *Wilkinson* v. *Bottoms,* 56 So. (Ala.) 948.   In *Whitaker* v. *Whitaker,* 157 Mo. 342, the declaration of a deceased cotenant was offered to show an ouster by him of other cotenants.   The court at page 354, *inter alia,* said:  "While the tendency of modern decisions is to admit explanations of the possessor of property as to his manner of occupancy, to show whether his possession was adverse or not under the statute of limitations, we think this evidence was clearly incompetent.   It was nothing but an attempt to prove an acquisition of his brothers' and sisters' title by his own *ex parte* declarations."   And in the same case (175 Mo. 1) the question again came before the court, and at page 6 it was said:  "The evidence is practically the same now as before, except that Mr. Campbell, instead of testifying as above stated, was not examined as to what Dr. Whitaker said about his having acquired the interest of his brothers and sisters in the land, but he testified 'Dr. Whitaker claimed to own the farm after he moved on it.' This was objected to and it is claimed that it was incompetent under the opinion of this court on former appeal.   This, however, is a mistake, for the testimony that 'Dr. Whitaker claimed to own the farm after he moved on it' is a very different thing from his saying that Dr. Whitaker said he had acquired the

interest of his brothers and sisters. The latter was clearly a self-serving statement, while the former is clearly admissible as going to show the character of his possession, and therefore to sustain the plea of ten years' adverse possession." In *Swope* v. *Ward,* 185 Mo. 316, the Missouri cases, especially the two decisions in *Whitaker* v. *Whitaker,* supra, are discussed, and the court at page 329 said: "During the examination of several of the witnesses for the defendants, the witnesses, in speaking of Ward's claim of title or right, said Ward had told them that he had bought the land or that Campbell had given it to him. As hereinbefore pointed out, such evidence was inadmissible and such statements, not having been made in the presence of the title-owner, should have been excluded. But in view of all the evidence in the case, the admission of such evidence must be taken as harmless error, for the verdict of the jury could not have been otherwise than it was, even with such evidence out of the case." In the case at bar, if it be error to admit the declaration of Kamai that she got the land by exchange with Campbell for the sole purpose of showing that she held it under claim of her own right and in hostility to Campbell's title, such error was harmless as the evidence shows that she held by actual enclosure, residence and occupation, and claimed the land as her own for a period of more than twenty years continuously, and the title is not claimed by the defendant by reason of the oral exchange between Kamai and Campbell, but by reason of twenty years' adverse possession—by operation of law—hence the admission of this declaration could not have injured the plaintiff. This is especially true in the case at bar inasmuch as the case was tried by the court without the intervention of a jury, and the real basis of the decision in favor of the defendant and against the plaintiff is that Kamai, the deceased wife of the defendant, acquired a perfect and complete title to the land, not by exchange with Campbell, but by continuous, open, notorious, visible, adverse possession for the requisite time. The reference in *Makekau* v. *Kane,* 20 Haw. 203, to the exception to the rule

in regard to declarations, that they must not relate to past trans-
actions, was made, as a reading of the decision in that case
shows, principally upon the authority of the decision in *Knight*
v. *Knight,* 178 Ill. 553, 557. In the *Knight* case the Illinois
court at page 556 said: "The court permitted appellees to put
in evidence declarations of their ancestor while he was in the
possession and control of the property after the execution and
delivery of the deed to appellant, such declarations being, in
effect, bare assertions of ownership of the premises. There
seems to be a unanimity in authorities that declarations are
admissible when accompanying an act of possession which is
provable. The declarations in such instances are regarded as
part of the act, or a 'verbal.act' indicating present purpose or
motive. Whether, to be regarded as admissible in evidence, the
declaration must be shown, in such cases as this, to be contem-
poraneous with some distinct and particular act of possession
has been questioned by respectable authorities. The fact here
involved is possession of the premises for the prescribed period
of time under claim of title. Actual possession for that period
is in the nature of a continuous act, and the better view is, that
particular acts of dominion over the property, and the declara-
tions of the possessor, while in possession, are of the *res gestae*
of the fact involved and hence equally admissible as evidence"
(citing *Duffy* v. *Presbyterian Congregation,* 48 Pa. St. 51;
*Recard* v. *Williams,* 7 Wheat. 59; *Austin* v. *Allen,* 6 Wis. 134;
*Rocke* v. *Andrews,* 26 Wis. 311; *Stockton Savings Bank* v. *Sta-
ples,* 98 Cal. 189; *Amick* v. *Young,* 69 Ill. 542; *James.v. Ind.
& St. L. R. Co.,* 91 Ill. 554; *Shaw* v. *Schoonover,* 130 Ill. 448;
*Grim* v. *Murphy,* 110 Ill. 271; *Ill. Cent. R. Co.* v. *Houghton,*
126 Ill. 233; *Shaw* v. *Smithes,* 167 Ill. 269; 1 Greenleaf on
Evidence, §§108, 109). In *Cannon* v. *Stockmon,* 36 Cal. 535,
541, it is said: "Acts and declarations of the party respecting
his claim, at any time while in possession before commencement
of the action, whether within or after five years (the statutory
time in California) after the commencement of his possession,

would be admissible as tending to show the character in which he claimed during the whole time, but the question as to whether there had been, at any time, a continuous adverse possession of five years, must be determined by the jury from all the evidence bearing upon the question." A parol exchange of lands and a parol gift of lands, followed in each instance by continuous possession for twenty years, will defeat an action of ejectment by one holding the paper title (*Ekalia, Guardian,* v. *Kopaea,* 4 Haw. 198; *Macfarlane* v. *Damon,* 10 Haw. 495). The declarations of Kamai, introduced in evidence, were made while in possession, did not relate to a past possession which she had surrendered, and were admissible, not to prove title but to show the nature of her claim and that it was not under Campbell but in hostility to the title of Campbell. I am clearly of opinion that the true rule, even if this case had been tried by a jury instead of by the court, jury waived, is correctly expressed in *Swope* v. *Ward,* supra, where the Missouri court held a similar declaration as harmless error and refused to set the verdict aside and grant a new trial on the ground that there was an abundance of evidence to establish title by adverse possession regardless of such declaration. That is true in this case, as I shall endeavor to point out later in this opinion.

In regard to exceptions 3, 4 and 5, I agree with the majority that the admission of the three leases, upon which revenue stamps had not been placed, constituted error. I am also clearly of the opinion that it was harmless error inasmuch as it is apparent from the whole record that they were simply introduced to show acts of dominion over the property by Kamai in using it through tenants, and that the leases were not offered or received for the purpose of proving their contents,—a matter not in issue,—but simply to show that she had leased. These leases were given long after title had vested in Kamai by continuous adverse possession and were immaterial as to the main question of adverse possession, and it is apparent that they were not received as substantive evidence showing the acquisition of

title by adverse possession,—the main issue in the case. If the defendant desired to introduce them he should have had them stamped, as he is authorized to do by Sec. 1352, R. L. It is. palpable from the entire record in this case that the decision and. judgment in favor of the defendant did not rest in whole or in part upon these leases, therefore their reception in evidence was. clearly harmless error. Not being prejudicial error a new trial is not authorized by reason of the admission of these leases in evidence (*Kapiolani Estate* v. *Thurston,* 17 Haw. 312; *Make-kau* v. *Kane,* 20 Haw. 203).

Touching exceptions 20 and 21, which challenge the correctness of the decision and judgment on the ground that the decision and judgment were contrary to law, contrary to the evidence, 'and contrary to the weight of evidence, I am clearly of the opinion that these exceptions should be overruled. The trial court found from the evidence that Kamai, the predecessor of the defendant, took possession of the land in dispute in 1878, occupied it, fenced it, built a substantial house on it, lived on it continuously up to the time of her death, leased and released portions of it, and acquired title by adverse possession prior to· 1902; that in 1902 the agent of the plaintiff procured her signature to a lease under which she was to occupy the land, rent free, and she was to lease whatever of it she desired and to receive half of the rents; that said lease expressed the nominal consideration of a rent reserved of $1 per annum, but was wholly without consideration and void. The court found the title to· be in the defendant and ordered judgment accordingly, which was entered. In my opinion there is abundance of evidence in the record showing that prior to 1902, the date of the lease from plaintiff to said Kamai, Kamai had by continuous, open, notorious, peaceable, adverse possession of the land in dispute acquired title thereto. Mr. Von Holt testified that Kamai was an. old retainer of the Meeks before Mr. Campbell got the land; that she was living in the house upon this land with Charlie Liilii who was Mr. Campbell's head cowboy. The defendant:

testified that he was 49 years of age and had lived all his life at Honouliuli; that Kamai, whom he later married, lived there all the time; that she had lived on another piece of land, but later, while her foster-son, Arthur Kalehua, was a baby, and soon after he was born, moved to the land in dispute and declared while living on it that it was her own; that she claimed it as her own and that she had got it from James Campbell by exchange. Arthur Kalehua testified that he was born in 1878 at Honouliuli; that Kamai was his foster-mother; that he lived with Kamai from his childhood up to the time of her death; that she lived on the land in dispute during all the time; that he was told that he was one year old when Kamai moved on the land; that Kamai cultivated the land,—raised taro and flowers —and leased parts of it to tenants who cultivated taro and rice on it; that Kamai never lived anywhere else except on this land while he knew her, and that she died on the land in dispute. This evidence would have justified a jury, and did justify the court, in finding that Kamai had held adverse possession of the land in dipsute for more than twenty years prior to the lease from the plaintiff in 1902; that she held possession with the actual knowledge of the owner of the fee, James Campbell, is apparent from the evidence, as he is shown to have stopped at her house on this land at times when they were making cattle drives. But it is argued that circumstances tend to show that her possession was permissive inasmuch as she lived with Charlie Liilii as his mistress on this land, and Charlie Liilii was in the employ of Campbell; that after Charlie Liilii left the premises and went to work on an adjoining cattle ranch, at Waipio, Kamai lived on the land with the defendant for quite a while before she was married to him, the defendant being during the time a cowboy in the employ of Mr. Von Holt (agent for plaintiff), hence her possession must be considered as permissive. It is also contended that the evidence of Mr. Von Holt proves that the continuity of her adverse possession was broken by her requesting Von Holt to permit her to remain on the land before

she had occupied it the requisite time under the statute to give her a title by adverse possession. In my opinion this contention cannot be sustained under the evidence in this case. Von Holt did testify to a conversation with Kamai in which he claimed that she asked permission to remain on the land. Whether that was before or after the expiration of the twenty years' possession by Kamai and the vesting of title in her by adverse possession, I do not regard as important. The trial court found that Kamai had occupied the land from 1878. The evidence abundantly sustains the proposition that she was on the land as early as December, 1879; that she fenced it and built an expensive house upon it, as found by the trial court, is also shown by the evidence. Now, when did she have the conversation with Von Holt, and what was that conversation? I quote the following from the testimony of Von Holt by question and answer: "Q. Did you have any—did you take any steps to define Kamai's occupation while you were in charge of the ranch property? A. Not until after Charlie Liilii left the employ of the company and went to work on a different ranch. Q. At what time was this? A. It is rather indefinite in my mind just how long he worked but I should judge that he probably was on the land maybe a year after the railroad took possession of the land." And further on Mr. Von Holt, being asked to explain the conversation which he had with Kamai and about which he had testified, said: "After Charlie Liilii left the employ of the railroad company, I went to Kamai and asked her what she intended to do—whether she intended to follow Charlie Liilii to Waipio. She said no, that they were pau, which is Hawaiian for finished, and I asked her if she proposed continuing to live in that house—she said that she would like to continue living there because she had no other place to go to." Now that conversation, as detailed by Von Holt, is not to my mind sufficient evidence that Kamai asked permission to remain there or recognized the title of the railroad company by the lease under which it claims. This conversation is vague and indefinite, but

O. R. & L. Co. v. Kaili, 22 Haw. 673.

at the same time it rebuts the theory of the plaintiff that Kamai was there by permission, and was in the house simply for the reason that she was consorting with the head cowboy of Campbell, afterwards in the employ of plaintiff. She was unwilling to give up what she regarded as her home and her land and to follow Charlie Liilii to another ranch. Her actions from the time she took possession of it are absolutely inconsistent with any other theory than that she regarded the land as her own, claimed it as her own, treated it as her own, and did not recognize title in any one else. An old, and probably ignorant, Hawaiian woman, under such circumstances, might well say that she wanted to continue living on the land in dispute, using the language attributed to her by Von Holt and quoted above, without admitting or recognizing that any one else, other than herself, owned the land. So I am clearly of opinion that the continuity of her adverse possession was not broken by this conversation between her and Von Holt, which must have occurred in 1891 or 1892. The time of the delivery of the lease from Campbell to Dillingham is not definitely fixed by the evidence, and no presumption that it was delivered before the date on which it was recorded, in the absence of positive testimony, should be indulged. That lease bears date November 19, 1889, was acknowledged November 22, 1889, and was filed in the registrar's office February 17, 1890. As shown in the majority opinion the release of Dillingham's interest, if any, in and to the premises in dispute, to the railroad company, was made by quitclaim deed. This quitclaim deed was dated and acknowledged March 23, 1892, and filed for record March 25, 1892. Whether the railroad company (the plaintiff) took possession before or after it succeeded to the title of Dillingham to the Campbell lease is not clear from the entire evidence, so far as the fifteen acres reserved is concerned. It is, however, reasonably certain, and no other inference can be drawn from the evidence than that the plaintiff never attempted to exercise dominion over the land in dispute prior to the time it received the

quitclaim deed from Dillingham in 1892. I do not regard the fact that Kamai lived with Charlie Liilii, or that defendant prior to his marriage to her, or the employment of either of them as cowboys for Campbell or for plaintiff, as sufficient evidence to support a conclusion that she was on the premises by permission and recognizing the title of either Campbell or the plaintiff to the premises in dispute.

As to payment of taxes by Kamai, the fact that she paid on this identical land may be proven and was proved by parol evidence in this case. "The fact of the payment of taxes may be shown by the receipt or certificate of the collector of taxes or other officer authorized to receive them, or by entries in the books and official records of the tax office or by any other competent evidence sufficient to satisfy a jury, including parol testimony, according to the doctrine prevailing in many states, although in some such testimony is not admissible unless the failure to produce a receipt or record evidence is first satisfactorily accounted for" (37 Cyc. 1167, 1168). Proof of the payment of taxes may be made by parol evidence the same as the payment of money in other cases, although receipts may have been given. *Hinchman* v. *Whetstone,* 23 Ill. 108, 111. The fact as to the payment of taxes is merely a circumstance tending to show the nature of the claim of Kamai, and while the same was of but little persuasive force in this case owing to the abundance of proof to show her adverse possession for twenty years or more by other evidence, it was admissible.

As to the lease from the railroad company to Kamai in 1902, it is not held, and could not successfully be contended, that the lease divested Kamai of title to the land, if she had acquired it. Did it estop her or her successor (the defendant) from asserting title to the land? It should be borne in mind that she did not receive possession of the land from the plaintiff and that no stated rent other than the nominal sum of one dollar per annum is mentioned or reserved in the lease. The trial court found from all the evidence that there was no considera-

tion for the lease as a matter of fact and of law, and that finding seems to be correct. The manner in which that lease was procured does not seem to strike the trial judge with much favor nor am I impressed with the justness and fairness of the manner in which it was procured. According to the evidence of Mr. Von Holt it took him a long time to talk this aged Hawaiian woman into accepting this lease, and in order to do so he had to call to his assistance a Hawaiian attorney,—a man of her own race, who by means which were not fully shown in the evidence did succeed in getting her to sign it. The facts and circumstances, and her actions, before and after, show, to my mind, conclusively, that she did not understand the lease or its effect as to her right to the land and her occupation and use of it. I find her, from the evidence in the case—from that of Von Holt and others—after the execution of this lease, renting portions of the land to others and collecting the rents, and expressing surprise on one or more occasions when tenants occupying a portion of it informed her that they had to pay the railroad company. There is not a particle of doubt in my mind that when that lease was accepted in 1902 by Kamai she had been in the continuous adverse possession of the land under a claim of right for more than twenty years and had acquired a complete title to the land, and the title of James Campbell (and of the plaintiff under its lease from Campbell to Dillingham assigned to it, as to the lands other than fifteen acres including the land in dispute, which was later quitclaimed to plaintiff in 1892) had terminated by operation of law. The said lease was in law. an admission of title in the plaintiff, but in law it was of no effect so far as passing title. "On the expiration of the limitation period the disseisor becomes possessed of a vested right or title, and that title relates back to the inception of his possession. He has an indefeasible title which can only be divested by his conveyance of the land to another, or by a subsequent disseisin for the statutory limitation period. It cannot be lost by a mere abandonment, or subsequent legislation, or even by the acknowl-

edgment of title in another" (1 R. C. L. §5, p. 690). One who has thus acquired title by adverse possession, or otherwise, is not estopped from claiming title to the land by accepting a lease thereof from another claimant, while he himself is in possession, and who has not at any time received the possession from the lessor and in subordination to the lessor (*Strong* v. *Baldwin*, 154 Cal. 150, 160; *Sage* v. *Rudnick*, 67 Minn. 362; *Towles* v. *Hamilton*, 94 Neb. 588; *Martin* v. *Martin*, 76 Neb. 335). Abandonment of the possession after the statute has fully run, or acknowledgment of title in another thereafter, does not divest one who has acquired title to lands by adverse possession of such title as by such adverse possession the title of the prior owner has been extinguished (*Allen* v. *Mansfield*, 82 Mo. 688; *Rennert* v. *Shirk*, 163 Ind. 542, 553; *Heinrichs* v. *Terrell*, 65 Iowa 25; *Sutton* v. *Pollard*, 96 Ky. 640; *Inhabitants etc.*, v. *Benson*, 31 Me. 381; *Doe* v. *Fletcher*, 37 Md. 430; *Hodges* v. *Eddy*, 41 Vt. 485; *Austin* v. *Bailey*, 37 Vt. 219). Title procured by adverse possession for the requisite time under statutes of limitation is as effectual as if procured by grant and extinguishes the title of the prior owner (*Sherman* v. *Kane*, 86 N. Y. 57; *Second M. E. Church* v. *Humphrey*, 21 N. Y. S. 89).

At most it must be admitted that the evidence tending to show the acquisition of title by Kamai by continuous adverse possession is to some extent conflicting, but there being more than a scintilla of evidence and sufficient evidence to support the decision in favor of such adverse possession, this court has not, under numerous decisions, authority to set aside the decision and judgment in this case. The decisions to this effect and to the further effect that the decision of the court takes the place of a verdict of a jury are so unanimous and numerous in this jurisdiction, and in others, that it is useless to advert to them. To my mind the judgment is set aside in this case and a new trial awarded upon harmless errors, in part, but mainly upon the ground that the evidence is conflicting and that the trial court is not the sole judge of the evidence where it is con-

flicting. In this jurisdiction that particularity and strictness in proving title by adverse possession, which, elsewhere obtains, does not obtain. Here slight evidence of adverse possession was, as early as 1884, held sufficient to establish title by adverse possession (*Mahukaliilii* v. *Hobron,* 5 Haw. 104). A new trial should not be granted for harmless error in the admission of immaterial evidence, nor on the ground that the evidence is conflicting when the gist of the main issue is substantially proven by the evidence.

In my opinion a new trial is not warranted in this case and is not authorized under the Hawaiian decisions, and the exceptions should be overruled.